## STATE ex RYAN v KERR

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12616.   Decided May 23, 1932

Joseph L. Stern and Lawrence A. Tucker, Cleveland, for relators.

W. George Kerr and William C. Dixon, Cleveland, for defendant.

LEVINE, PJ.

It is claimed in support of the prayer for mandamus that the charter of the City of Cleveland affords them protection against summary dismissal; that a summary dismissal is in violation of the provisions of the charter and is, therefore, null and void and of no effect.

The gist of the argument of counsel for the relators as to the legal point involved and applicable, may be stated as follows: It is contended by counsel for the relators that these assistant law directors must, under the provisions of the charter, be regarded as in the classified service. The following is quoted from paragraph two of §126 of the charter of the City of Cleveland.

"There shall be in the classified service two classes, to be known as the competitive class and the non-competitive class.

"a. The competitive class shall include all positions and employment for which it is practicable to determine the merits and fitness of applicants by competitive tests.

"b. The non-competitive class shall consist of all positions requiring peculiar and exceptional qualifications of a scientific managerial, professional, or educational character, as may be determined by the rules of the commission."

The effect of the above cited paragraph according to the contention of counsel for the relator is that there are two classes of classified service to be known as the **competitive class and the non-competitive class,** and that the relators belong to the non-competitive class of the classified service.

If this contention be true, it would be diametrically opposed to the provisions of the code contained in §486-8 GC, which, in part, defines "positions in unclassified service." This section of the General Code sets forth twelve specifications as to what positions are deemed in the unclassified service. Specification eleven reads: "Assistants to the attorney general, special counsel appointed or employed by the attorney general, assistants to county prosecuting attorney and assistants to the city solicitor." The office of city solicitor is merely another name for what the charter now calls the law director. The assistants to the city solicitor occupy the same position and exercise the same duties as do now assistants to the officer denominated in the charter as the law director.

It will be seen that the charter does not

contain a similar express provision placing assistants to the law director in the unclassified service.

It may well be argued that the omission from the charter of a provision similar to that of §486-8 GC, expressly placing assistants to the solicitor or assistants to the law director in the unclassified service was not unintentional, that it was the purpose of the Cleveland charter to place such assistants in the non-competitive class of the classified service. If that be true, the relators would in law be entitled to the protective provisions of the charter applying to persons occupying positions in the classified service against summary dismissal.

Our attention is directed to §84 of the present charter of the city of Cleveland which reads:

"The director of law shall be the prosecuting attorney of the Municipal Court. He may designate such number of assistant prosecutors as the council by ordinance may authorize. He shall prosecute all cases brought before such court and perform the same duties, so far as they are applicable thereto, as are required of the prosecuting attorney of the county."

It is not straining this provision of the charter to say that the assistants to the law director in charge of the prosecution of criminal cases are required to perform the same duties, so far as they are applicable, as are required of assistants to the prosecuting attorney of the county. The purpose seems to be clear, namely, to create the position of city prosecutor, who is to exercise the same powers and duties as does the prosecutor of the County. The assistants to the prosecuting attorney of the County are by the express provisions of the General Code expressly placed in the unclassified service. The same provision of the code puts the position of assistants to city solicitor in the unclassified service.

The purpose of the law seems therefore clear, namely, that assistant solicitors shall be regarded as in positions similar to that of assistants to the county prosecutor.

The question arises: Did the framers of the charter intend to depart from the provisions of the General Code which place assistants to the law director or assistants to the city solicitor in the unclassified service? Did it intend to place such positions in the non-competitive class of the classified service?

Since the charter does not expressly provide as does the General Code as to which class the assistant law directors in charge of the prosecution of criminal cases shall be placed in, it becomes a question of interpretation as to what was the intention of the framers of the charter. It is a sound rule of interpretation that, in attributing a purpose and intention to the framers of a law that such intention and purpose should, if possible, be a reasonable intent and purpose. Tested by this rule of interpretation we are to inquire whether the attributing of such intention to the charter, that assistant law directors in charge of the prosecution of criminal cases shall be regarded as in the classified service, is reasonable or logical. It must be kept in mind that the assistants to the law director are required to be not only lawyers duly admitted to the bar after a rigid examination by examiners appointed by the Supreme Court of Ohio, but must have practiced law for a period of not less than two years before they are eligible to such an appointment. We can see no purpose in requiring that these assistant law directors shall undergo another examination as to their legal qualifications. The folly of such a requirement becomes lucid and apparent when we examine into the actual examination afforded these assistants of the law director at a subsequent period. The questions asked of them were so insignificant as to afford no test of ability whatsoever. They are of such a simple nature that a novice in the study of the law would deem it in that light. Was it intended, therefore, by the framers of the charter that the Civil Service Commission act as a supervisory power over the Supreme Court of Ohio?

It seems to us that to attribute an intention to the framers of the charter, namely, to constitute the civil service board, often composed of members who are not even lawyers, a supervisory power which may disregard the edict of the Supreme Court of Ohio, when it admitted applicants for admission to the bar after a rigid examination, as to the qualification of the members of the bar, is so puerile as to almost make it humorous. There is no express authority by way of precedent to be found in Ohio, but we are aided considerably by language contained in an opinion in People v Taylor, 40 New York Supp., 321. At page 324 the court says:

"The district attorney is charged with grave responsibility and duties of the highest moment to the county. His assistants for whom he is responsible occupy the most confidential relations to him and necessarily are charged with duties of the utmost importance. I think the public welfare demands that the district attorney, in the selection of his assistants, should be left

absolutely free in the exercise of his own judgment and discretion."

We are quite aware of the principle of the law that where there is a conflict between the provisions of the General Code and the provisions of the Municipal charter, in a matter relating to the Civil Service, that the provisions of the charter must be regarded as supreme, the General Code to the contrary notwithstanding.  See **State ex Lenz v Edwards, 97 Oh St 305.**

But in order that such a rule be followed, the conflict must appear by the express terms in the charter and not by mere inference.  It will be noticed that there is no express provision of the charter classifying assistants to the law director, in charge of the prosecution of criminal cases.  The contention by counsel for relators is that persons or classes of persons placed in the unclassified service, are enumerated in the charter and that assistants to the law director, in charge of prosecution of criminal cases, are not expressly included in the unclassified service, and that it must, therefore, follow that such assistants belong to the non-competitive class of the classified service.

In order that we hold that thereby arises a conflict between the provisions of the charter and the General Code, we would have to resort not to the language of the charter but to the inference contended for by counsel for the relators.  Section 84 of the present charter of the City of Cleveland provides:  "That he may designate such number of assistant prosecutors as the council by ordinance may authorize."  The power to designate, as used in this section, seems broad and not subject to condition.  Counsel for the relators maintains that §84 above cited, must be read so as to mean that "He may designate such number of Assistant Prosecutors * * * but that he must choose them from the eligible list."  There is no express provision in the charter to that effect.  If this interpretation contended for is to be adopted, it would be on the basis of inference in order to harmonize the same with inferences drawn from other portions of the charter.

We hold that where there is no conflict in express statements between the provisions of a municipal charter and the provisions of the General Code, that inferences alone cannot be depended upon in order to establish such conflict.  The duty of the court then becomes clear to seek to harmonize the provisions of the charter with the provisions of the General Code.  In other words, in the absence of express language in the provisions of the municipal charter,

showing that it conflicts with the provisions of the General Code, the court must attribute an intention to the framers of the charter that they intended to harmonize the provisions of the charter with the provisions of the General Code relating to the same subject matter.

It is quite clear to us that, if §4086-8 GC, which defines positions in unclassified service, stood alone and there were no municipal charter provisions to consider, the assistants to the law director in charge of the prosecution of criminal cases would, under the express provision of the Code, be regarded as assistant solicitors and, therefore, be placed in the unclassified service.  A contrary charter provision would have the effect of a virtual repeal of the provision of the General Code in so far as the City of Cleveland is concerned, as it would undo the force and effect of the provisions of the General Code.  It is well established that there can be no repeal by implication, and it is likewise the law that, in order to undo the force and effect of a provision of the General Code, the charter must legislate specifically on the same subject; that the mere general classification in the charter of the various branches of the civil service, in language broad enough to include the relators, is not sufficient to undo the force and effect of the express provisions of the General Code covering the same subject matter.  When the legislature of Ohio enacted a law covering the same subject matter and in express terms placed certain persons and certain classes of persons in the unclassified service, they must so remain in the unclassified service unless the charter by its express language provided otherwise.

Reasoning by analogy, we shall suppose that after the enactment of §4086-8 GC, including specification 11 which places the assistant solicitors in the unclassified service, the legislature of Ohio at a later date passed another law similar to the law now contained in the charter classifying civil service in the same language now contained in the Cleveland charter.  Could it be maintained that because the later law was framed in language so general as to include within its terms the positions of assistant solicitors so as to place them in the classified service, that thereby §4086-8 GC, including specification 11 was repealed and set aside?  The answer is obvious that the general classification contained in an act passed at a later date by the legislature in the absence of an express repeal of §4086-8 GC including specification 11, could not be deemed as a repeal of the express provision of §4086-8 GC including specification 11, as

there can be no repeal by implication, and the later act would, therefore, be so interpreted as not to conflict with the express provision of §4086-8 GC including specification 11. The same reasoning applies with equal force when it is sought to nullify the express enactment contained in §4086-8 GC including specification 11, by charter provisions claimed to be in conflict with the provisions of the General Code.

We conclude that the position of assistant law director is of such confidential relation and the duties imposed upon them are of such importance that it is in the interest of the public welfare that the appointing power, to-wit, the law director, shall exercise such disciplinary supervision as he deems necessary. While it is true that the Civil Service Commission provided by rule for an examinaton of assistants to the law director, we are of the opinion that such rule of the Civil Service Commission, in so far as it relates to assistant prosecutors, is not authorized by the charter of the City of Cleveland; that the examination is nugatory and of no legal significance. The law director without interference has the appointing power. The power to appoint without interference also implies the power to discharge.

Holding as we do, the prayer for mandamus will be denied and the petition dismissed.

WEYGANDT, J, concurs.
VICKERY, J, not participating.