Matthias, J.
 

 Although the agreed statement of facts is rather voluminous, the facts essential to a decision of the question of law may be concisely stated. The Board of Control of the city, consisting of the mayor and the directors of the several departments under provisions of the charter authorizing such board
 
 *325
 
 to fix the number of employees of the Department of Public Utilities and also their compensation, on March 28, 1935, provided for thirty water-meter repairmen and fixed their compensation at a certain hourly rate. On and prior to April 15, 1935, thirty persons were thus employed, ten of whom had theretofore been duly appointed to such positions from eligible lists established as a result of competitive tests. Those subsequently employed were placed on the rolls as laborers, but such certification was rejected by the respondents for the reason that as laborers they could not perform the duties of water-meter repairmen, for such positions came within the classified service under the charter. There was at that time no so-called “lay-off” list for water-meter repairmen, nor has any test for such eligible list since been conducted. The charter of the city fixes forty-eight hours per week as the maximum for city employees, but establishes no minimum.
 

 The relator, on May 1, 1935, appointed the twenty-one persons theretofore designated as laborers to positions as temporary water-meter repairmen on an hourly basis, and all, including those theretofore regularly appointed from duly established eligible lists, worked at an hourly rate on a basis of twenty-eight hours per week, thus staggering non-civil service employees with civil service employees.
 

 On May 13, 1935, the Civil Service Commission refused to certify the twenty-one temporary appointees on the payroll, the stated reason for such refusal being that: “When there is a sufficient number of employees in a particular class or on lay-off lists or eligible lists from which appointments can be made to perform the work in a department without violating the eight-hour law of the Charter, no urgent reason for temporary appointments can exist under Rule 6, Section 4, and hence temporaries cannot be appointed to be staggered with classified employees.”
 

 
 *326
 
 The determination of the issue in this case depends primarily upon the validity of Rule 6, Section 4, of the Civil Service Commission, which is as follows: “Provisional or Temporary Appointments: Whenever there are urgent reasons for filling a vacancy and the Commission is unable, upon requisition, to certify a list of persons eligible for appointment after a competitive examination, the appointing officer
 
 may nominate a qualified person for provisional appointment.
 
 Such provisional appointment shall continue in force only until a regular appointment can be made from an eligible list which shall be prepared by the Commission within 90 calendar days thereafter.” (Italics ours.)
 

 It is contended that this rule is in conflict with Section 130 of the charter, which is as follows: “Eligible lists created by the Commission shall remain in force not longer than two years. In the absence of an appropriate eligible list,
 
 any place may be filled temporarily,
 
 without test, for the period
 
 limited by the Civil Service rules,
 
 but not exceeding ninety days. During such period the Commission shall hold the necessary tests for filling any such place permanently.” (Italics ours.)
 

 Though the Civil Service Commission may not extend its jurisdiction or add to its powers conferred by the charter
 
 - (Davis et al., Civil Service Comm.,
 
 v.
 
 State, ex rel. Kennedy, Dir.,
 
 127 Ohio St., 261, 187 N. E., 867), yet under the specific authority conferred by Section 127 of the charter, it “shall make, promulgate, and when necessary may amend, rules for the appointment, promotion, transfer;, lay-off, reinstatement, suspension and removal of city officials and employes in the classified service.”
 

 Section 128 of the charter contains the further provision: “The rules of the Civil Service Commission shall among other things provide * # * (g) For
 
 *327
 
 temporary employment without test, in the absence of an eligible list. But no such temporary employment shall continue after the establishment of a suitable eligible list. * * * The Commission shall adopt other rules, not inconsistent with the foregoing provisions of this section as may be necessary and proper for the enforcement of the merit system, and to provide for the procedure of the Commission.”
 

 The clear object and purpose of these provisions is to authorize the adoption of rules that will secure the effective and efficient operation and enforcement of the merit system. • Hence, any rule which promotes such purpose and prevents the evasion thereof cannot be held to be inconsistent with the charter, unless clearly irreconcilable with some specific provision of the charter.
 

 Temporary appointments in the classified service are of an emergency character. They cannot be employed to thwart the very purpose of the merit system. Reduction of the working hours of the regularly appointed water-meter repairmen served to make apparent vacancies for double that number of so-called temporary appointees. The total number of working hours per week of regularly appointed water-meter repairmen had been reduced to twenty-eight. A further reduction of working hours would, of course, create still more vacancies and thereby practical evasion of civil service requirements could be accomplished. Reduction of hours of labor may, of course, be effected; but when that is done to make place for more appointees to perform a given service, it amounts to an unwarranted suspension or
 
 pro tcmto
 
 dismissal of duly qualified and regularly appointed employees. Carried to the extreme, it could be made to effectually abolish the merit system.
 

 The act sought to have enforced by mandamus not being one enjoined by law upon the respondents, the
 
 *328
 
 Court of Appeals was right in refusing the writ and the judgment of that court is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Day and Zimmerman, JJ., concur.