THE STATE, EX REL. BARDO, APPELLANT, *v.* CITY OF LYNDHURST ET AL., APPELLEES.

[Cite as State, ex rel. Bardo, *v.* Lyndhurst (1988), 37 Ohio St. 3d 106.]

(No. 86-504—Submitted December 8, 1987—Decided June 8, 1988.)

*Butler, Clarke & Feighan, Dennis F. Butler* and *Joseph E. Feighan, Jr.,* for appellant.

*Jacque M. Haines,* law director, for appellees.

*Per Curiam.* In order for the extraordinary writ of mandamus to issue, this court "must find that the relator has a clear legal right to the relief prayed for, that the respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law." *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus.

I

In this case, the determinations of relator's right to the promotion and respondents' duties to promote him re-

quire the resolution of a conflict between the civil service commission's rules[2] and R.C. 124.44,[3] as to the procedural requirements governing promotions of police officers. Essentially, relator argues that respondents are required by R.C. 124.44 to certify and promote the highest-rated person on the current eligibility list when a vacancy occurs. The respondents contend that the city's home rule charter supersedes the statutory provisions, allowing the commission's rules to apply and the commission to certify someone other than the top-rated person on the eligibility list.

The Home Rule Amendment to the Ohio Constitution, Section 3, Article XVIII, provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police,

sanitary and other similar regulations, as are not in conflict with general laws."

Municipalities exercise the powers of local self-government to the fullest by adopting a charter pursuant to Section 7, Article XVIII of the Ohio Constitution, which section provides:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

The appointment of officers within a city's police force is an exercise of "local self-government" within the meaning of those words as used in the Ohio Constitution. *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, 5 O.O. 2d 481, 151 N.E. 2d 722. The general rule is that in matters of local self-government, if there is a

---

[2] The Rules of the Lyndhurst Civil Service Commission, in pertinent part, provide:

"Rule VIII Promotions
"Section 8. * * *
"* * *

"*After a review of the psychological profile, the conclusions drawn from the oral interview and the report(s) of the departmental chief and/or the appointing authority (if either has submitted a report for consideration), the Commission shall certify to the appointing authority one of the applicants for the promoted position.* In making such certification, the Commission shall have taken into consideration the grades the candidates achieved in the written examination, seniority, the reports (if submitted) of the chief of the department wherein the promotion may take place and/or the appointing authority, the psychological profile and the performance efficiency reports concerning each candidate or applicant covering the last two years immediately preceding the aforementioned review by the Commission.

"Such eligible applicant shall be appointed by the appointing authority within

thirty days after such certification." (Emphasis added.)

[3] R.C. 124.44 provides:

"Whenever a vacancy occurs in the position above the rank of patrolman in a police department, and there is no eligible list for such rank, the municipal or civil service township civil service commission shall, within sixty days of such vacancy, hold a competitive promotional examination. After such examination has been held and an eligible list established, the commission shall forthwith certify to the appointing officer the name of the person receiving the highest rating. Upon such certification, the appointing officer shall appoint the person so certified within thirty days from the date of such certification. *If there is a list, the commission shall, where there is a vacancy, immediately certify the name of the person having the highest rating, and the appointing authority shall appoint such person within thirty days from the date of such certification.*

"* * *" (Emphasis added.)

conflict between a charter provision and a statute, the charter provision prevails. *State, ex rel. Devine,* v. *Hoermle* (1959), 168 Ohio St. 461, 7 O.O. 2d 284, 156 N.E. 2d 131; *State, ex rel. Allison,* v. *Jones* (1960), 170 Ohio St. 323, 10 O.O. 2d 417, 164 N.E. 2d 417.

The rule of charter supremacy applies only where the conflict appears by the express terms of the charter and not by mere inference. *State, ex rel. Ryan,* v. *Kerr* (1932), 42 Ohio App. 19, 12 Ohio Law Abs. 292, 181 N.E. 546, affirmed (1932), 126 Ohio St. 26, 183 N.E. 535. In the absence of express language in a charter showing that it conflicts with the statutes, it is the duty of the courts to harmonize the provisions of the charter with the provisions of the statute relating to the same matter. *State, ex rel. Votaw,* v. *Matia* (1932), 43 Ohio App. 279, 12 Ohio Law Abs. 414, 183 N.E. 122, affirmed on other grounds (1932), 125 Ohio St. 598, 183 N.E. 533. While the express language of a charter may abrogate or nullify a state civil service law, such a result cannot be accomplished by a charter provision delegating authority to a municipal commission to nullify the law by adoption of a rule. *Id.* at 281, 12 Ohio Law Abs. at 415, 183 N.E. at 123.

Civil service commissions acting under home rule charters may be authorized to adopt such rules as may be necessary and proper for the enforcement of the merit system. *State, ex rel. Rogers,* v. *Green* (1935), 130 Ohio St. 323, 4 O.O. 355, 199 N.E. 173. Nevertheless, some form of charter authorization is necessary to enable municipalities to adopt ordinances or administrative rules that will prevail over statutory provisions in case of conflict. See *State, ex rel. Petit,* v. *Wagner* (1960), 170 Ohio St. 297, 10 O.O. 2d 344, 164 N.E. 2d 574; *Morris* v. *Roseman* (1954), 162 Ohio St. 447, 55 O.O. 255, 123 N.E. 2d 419.

The two Lyndhurst Charter provisions relevant to this issue are Section 5 of Article IV and Section 5 of Article V.

Section 5, Article IV sets forth the executive powers of the mayor:

"The Mayor shall be the chief executive officer of the City. He shall supervise the administration of the City's affairs and shall exercise control of all departments and divisions. He shall be the chief conservator of the peace within the City and shall see that all laws and ordinances are enforced therein. He shall be responsible for the preparation and submission of the annual estimate of receipts and expenditures, and of appropriation measures, and shall at all times keep the Council fully advised as to the financial condition and needs of the City. He shall see that all terms and conditions imposed in favor of the City or its inhabitants in any franchise or contract to which the City is a party are faithfully kept and performed. *Subject to the other provisions of this Charter and of the Laws of Ohio, the Mayor shall have the power to appoint, promote, transfer, reduce or remove any officer or employee of the City* except (a) those required by this Charter to be elected, or (b) those whose terms of office are fixed by this Charter, other than the Director of Law and the Director of Finance. * * *" (Emphasis added.)

Section 5, Article V sets forth the duties of the commission:

"*The Civil Service Commission shall provide by rule for the ascertainment of merit and fitness as the basis for appointment and promotion in the service of the City as required by the Constitution of Ohio,* and for appeals from the action of the Mayor in any case of transfer, reduction or removal. The action of the Commission on any such appeal shall be final except as otherwise provided by the Laws of Ohio. * * *" (Emphasis added.)

Relator contends that Section 5, Article V gives the commission rule-making authority only as to the limited matters of ascertainment of merit and fitness for appointment and promotion. Since the charter does not delegate rule-making authority over any other civil service matters, and because the mayor's powers to promote under Section 5, Article IV are subject to the laws of Ohio, relator argues that there is no conflict between the charter and the requirements of R.C. 124.44. Thus, as the highest-rated person on the eligibility list in effect when the vacancy occurred, relator contends he was entitled to be promoted when a vacancy existed at the lieutenant's position, and the respondents had the clear legal duty to promote him.

The respondents argue that Section 5, Article V delegates to the commission comprehensive authority to adopt rules regarding all civil service matters. Since that grant of rule-making authority does not require the commission to act in accordance with the laws of Ohio except with regard to the finality of appeals from certain mayoral actions, there is a conflict between the charter and the statutory civil service requirements. Thus, it is argued, under the rule of charter supremacy, the commission's rules supersede R.C. 124.44, and therefore relator had no legal entitlement to the promotion.

Relator's reliance on *State, ex rel. Pell,* v. *Westlake* (1980), 64 Ohio St. 2d 360, 18 O.O. 3d 514, 415 N.E. 2d 289, is misplaced. That case is distinguishable on its facts. The charter provisions at issue in *State, ex rel. Pell* contained clear and unambiguous language which required the civil service commission to conduct its affairs in accordance with general law as to all matters not in conflict with other charter provisions. The Lyndhurst Charter

provision contains no comparable provisions. Instead, the delegation of commission powers refers only to compliance with the requirements of the Ohio Constitution.

The respondents rely on *State, ex rel. Canada, supra,* in support of their contention that the commission's rule should prevail. Respondents argue that *Canada* establishes the general proposition that a city with a home rule charter may adopt any rules for "appointment and promotion," which will prevail over conflicting state statutes. However, the rule upheld in *Canada* was expressly set forth in the charter. *Canada* did not examine the issue of a commission's authority to adopt rules in the absence of clear and express charter language delegating rule-making authority.

*State, ex rel. Ryan, supra,* held that express charter language is required in order to supersede conflicting statutory civil service provisions. *State, ex rel. Votaw, supra,* held that abrogation or nullification of a state civil service law cannot be accomplished by a charter provision delegating rule-making authority to the civil service commission.

We believe that the holdings of *State, ex rel. Ryan* and *State, ex rel. Votaw* are consistent with the purpose of the home rule provisions of the Ohio Constitution. Although the Constitution gives municipalities the authority to adopt home rule, local self-government, the exercise of those powers by the adoption of a charter should clearly and expressly state the areas where the municipality intends to supersede and override general state statutes. Accordingly, we hold that express charter language is required to enable a municipality to exercise local self-government powers in a manner contrary to state civil service statutes.

Because the Lyndhurst Charter

does not contain a clear and express exercise of home rule powers specifically authorizing the commission to adopt rules with regard to certification of names from promotion lists, neither the charter nor the commission's rules supersede the requirements of R.C. 124.44 as to certification of candidates from eligibility lists.

Since we hold that the requirements of R.C. 124.44 apply, we hold that relator had a clear legal right to the promotion. The commission was under a clear legal duty to certify relator's name to the mayor, and the mayor was under a clear legal duty to promote relator, if a vacancy in the rank of lieutenant existed as of April 1985, when relator filed his complaint in mandamus.

## II

Relator contends that a vacancy in the rank of lieutenant existed upon the retirement of a lieutenant on June 1, 1984, because the city ordinance regarding the size of the police department prescribed five lieutenants and only four positions remained staffed, and that this situation still existed in April 1985, when relator filed his complaint for a writ of mandamus.

The respondents argue that no vacancy existed because of the mayor's freeze on promotions. In effect, respondents contend that the requirements for a balanced operating budget, imposed by R.C. Chapter 5705, together with the mayor's authority over the city's financial matters pursuant to Section 5, Article IV of the charter, afforded the mayor discretionary authority to impose the freeze and to refuse to fill the vacant lieutenant's position. The court of appeals agreed:

"The mayor had no duty to declare the claimed vacancy when a prior office holder resigned, if he concluded in the reasonable exercise of his discre-

tion that the City's finances would not then afford that action. Relators have failed to demonstrate that the mayor abused his discretion."

The respondents rely on *Gannon v. Perk* (1976), 46 Ohio St. 2d 301, 75 O.O. 2d 358, 348 N.E. 2d 342, to support their argument that the authority to lay off city employees due to a lack of funds encompasses the lesser measure of not replacing employees on a temporary basis for the same reason. Furthermore, they argue that the city council's continuing reduction of general fund appropriations for police salaries supported the mayor's discretionary actions in not replacing retiring employees.

Respondents' reliance on *Gannon* is misplaced. In *Gannon,* the layoffs were made in accordance with the mayor's powers as set forth in statutes, charter, and municipal ordinances:

"Appellees, in effect, contend, in their cross-appeal, that the Court of Appeals erred in determining that the mayor of the city of Cleveland possessed the authority to lay off municipal employees, including policemen and firemen, for reasons of economy. We disagree, and affirm the judgment of the Court of Appeals in this regard.

"In *State, ex rel. Buckman,* v. *Munson* (1943), 141 Ohio St. 319, 326, the court concluded that public employees may be laid-off for reasons of economy 'notwithstanding statutory or charter provisions to the effect that no employee in the classified service shall be removed except for cause * * *, the view * * * being that such statutory or charter provisions * * * are not intended to restrict the public authorities in their efforts to effect necessary or desirable economies.'

"The reasoning of the court in *Munson* applies as well to the cause at bar. *Lack of funds induced when pro-*

*jected income falls below anticipated expenses is a legitimate basis for laying off civil service employees, including safety personnel, so long as such layoffs are made in conformity with law. In the instant case, then, the issue becomes whether the layoff of policemen and firemen was made in conformity with the ordinances, charter provisions, and civil service rules of the city of Cleveland.*

"The charter and ordinances of the city do not establish a mandatory priority for layoffs of municipal employees due to reasons of economy. *Therefore, the power to lay off municipal employees must repose within the sound discretion of the mayor of the city, as its chief executive officer, to be exercised in accordance with law.*" (Emphasis added.) *Id.* at 312-313, 75 O.O. 2d at 365, 348 N.E. 2d at 349-350.

In this case, the respondents have failed to cite any statutory, charter, or ordinance provision as specific authority for their refusal to make promotions in accordance with the civil service statutes.

In *State, ex rel. Pell, supra,* we rejected the argument that it was necessary for a relator to demonstrate that there was a specific or express appropriation for the funding of a vacant position, holding that such a requirement would "place such a burden on an individual police officer, otherwise eligible for promotion, [that it] would constitute a *pro tanto* repeal of the constitutional mandate that promotions in the civil service shall be according to merit and fitness." *Pell, supra,* at 363-364, 18 O.O. 3d at 517, 415 N.E. 2d at 291. We noted that the court of appeals had also rejected the proposition that the appellant's right to the promotion could be summarily defeated by subsequent reductions in the police salary appropriations. *Id.* at 364, 18 O.O. 3d at 517, 415 N.E. 2d at 292, fn. 7.

In this case, the facts show that as of June 1, 1984, there was a vacancy in the rank of lieutenant. Furthermore, there were continuing council appropriations for police salaries. The court of appeals erroneously concluded both that the mayor had the authority to impose a freeze on promotions and that the mayor did not abuse his discretion by refusing to replace the retiring lieutenant. Since a vacancy existed at the rank of lieutenant, the mayor had no discretion to refuse to appoint relator to that position. See, *e.g., McCarter* v. *Cincinnati* (1981), 3 Ohio App. 3d 244, 3 OBR 276, 444 N.E. 2d 1053, paragraph one of the syllabus.

### III

The writ of mandamus must not be issued when there is a plain and adequate remedy in the ordinary course of the law. R.C. 2731.05. Adequate administrative remedies preclude the availability of the extraordinary remedy of mandamus. See, *e.g., State, ex rel. Cartmell,* v. *Dorrian* (1984), 11 Ohio St. 3d 177, 11 OBR 491, 464 N.E. 2d 556.

The respondents contend that relator had a plain and adequate remedy under the grievance procedures contained in the February 1, 1985 collective bargaining agreement between the city and the police lieutenants and sergeants pursuant to the Ohio Public Employees' Collective Bargaining Act, R.C. Chapter 4117. They argue that promotions are matters covered by the agreement, and that under Sections 2 and 6, Article XVII of the agreement, a dispute over a denied promotion is a grievance that must be pursued as specified in the agreement. The issue is whether relator's right to the disputed promotion is a matter covered by the agreement and subject to the grievance procedure.

The respondents argue that promotions are matters subject to the

grievance procedure by virtue of Section 1, Article VI[4] of the agreement.

Section 1, Article VI is a list of the matters over which the city specifically reserved all rights, powers and authority. The section is essentially a reiteration of the areas which the law recognizes in R.C. 4117.08(C)[5] as matters that may be negotiated in collective bargaining agreements at the discretion of the parties. Merely listing these subjects in the agreement as reserved powers of the city does not make them "matters covered by the agreement" for purposes of resort to the grievance procedure. Since the agreement contains no detailed discussion of these matters, we believe that the intent of the agreement is that existing procedures and policies as to those matters will remain intact and unaltered.

Because matters dealing with promotions are not covered by the agreement, its grievance procedure does not provide a remedy that would bar relator's complaint for a writ of mandamus. Relator had no clear, legal remedy under the agreement.

## IV

Relator's final contention is that he is entitled to back pay for the period of time during which his promotion was wrongfully denied. Relator contends that such damages are authorized by R.C. 2731.11, and that this court has

---

[4] "ARTICLE VI — MANAGEMENT RIGHTS

"Section 1. Except as specifically limited by explicit provisions of this Agreement, the City reserves and retains, solely and exclusively, all rights, powers, and authority, including the right to determine and to take actions to carry out the mission of the City and its Police Department, determine staffing policy, and in all other respects to plan, manage, evaluate, administer, govern, control, and direct its personnel and operations. Such exclusive rights include, but are not limited to, the following:

"* * *

"E. To hire, evaluate, assign, transfer, schedule, supervise, direct, promote, demote, layoff [sic], retain, discipline, suspend and discharge employees."

[5] R.C. 4117.08 provides, in pertinent part:

"(B) The conduct and grading of civil service examinations, the rating of candidates, the establishment of eligible lists from the examinations, and the original appointments from the eligible lists are not appropriate subjects for collective bargaining.

"(C) Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117. of the Revised Code impairs the right and responsibility of each public employer to:

"* * *

"(5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees;

"* * *

"The employer is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment, and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement. A public employee or exclusive representative may raise a legitimate complaint or file a grievance based on the collective bargaining agreement."

R.C. 4117.08(B) removes from the collective bargaining arena civil service matters relating to the competitive testing for positions, the establishment of eligible lists and initial appointments therefrom. R.C. 4117.08(C) removes promotions from the scope of the collective bargaining agreement unless the parties affirmatively address that subject in their negotiations. If a term of employment is not covered by an agreement, the exclusive grievance and supersession provisions of R.C. 4117.10 do not apply. Instead, the applicable state laws or municipal home rule charter provisions govern.

recognized the propriety of such compensation in mandamus actions by its decisions in *Monaghan* v. *Richley* (1972), 32 Ohio St. 2d 190, 61 O.O. 2d 425, 291 N.E. 2d 462, and *State, ex rel. Dean,* v. *Huddle* (1976), 45 Ohio St. 2d 234, 74 O.O. 2d 378, 344 N.E. 2d 138.

The respondents rely on *State, ex rel. Gibbons,* v. *Cleveland* (1984), 9 Ohio St. 3d 216, 9 OBR 526, 459 N.E. 2d 892, and *State, ex rel. Zone,* v. *Cleveland* (1986), 23 Ohio St. 3d 1, 23 OBR 1, 490 N.E. 2d 600, to support their argument that no legal right to back pay can be established before an appointment has occurred, regardless of the reasons for the failure to appoint.

*Monaghan, supra,* reiterates the long-standing holding of this court that a *reinstated* public employee may maintain an action in mandamus to recover compensation due him for the time he was wrongfully excluded from employment provided that the amount is established with certainty. See, also, *State, ex rel. Martin,* v. *Columbus* (1979), 58 Ohio St. 2d 261, 12 O.O. 3d 268, 389 N.E. 2d 1123, paragraph one of the syllabus, and *State, ex rel. Crockett,* v. *Robinson* (1981), 67 Ohio St. 2d 363, 21 O.O. 3d 228, 423 N.E. 2d 1099. However, *Monaghan, Martin,* and *Crockett* do not support relator's contention that the same right to back pay applies where a promotion is wrongfully delayed or denied.

In *State, ex rel. Gibbons, supra,* we held that:

"* * * [N]o legal right to back pay can be established before an appointment has occurred, regardless of the reasons for the failure to appoint.* * *

"It is well-settled that mandamus does not lie to compel the granting of benefits conferred by the civil service laws unless it has been established that the employee was appointed to the civil service position in question. * * *"

(Citations omitted.) *Id.* at 217, 9 OBR at 527, 459 N.E. 2d at 893. Similarly, "when a civil service appointment has been compelled by way of mandamus, no concomitant order of back pay * * * [is to be] included for the period of time before the employee received his appointment." *Id.* at 218, 9 OBR at 528, 459 N.E. 2d at 894. *State, ex rel. Gibbons* was followed in *State, ex rel. Zone, supra.*

However, in two more recent decisions, we have established an exception to *Gibbons.*

In *Morgan* v. *Cincinnati* (1986), 25 Ohio St. 3d 285, 25 OBR 337, 496 N.E. 2d 468, the syllabus holds:

"Where a civil service employee shows that a promotion to which he was entitled was delayed as the result of actions taken by a municipality in violation of R.C. 124.44, that employee is entitled to recover back pay and seniority for the period of the delay. (*State, ex rel. Gibbons,* v. *Cleveland* [1984], 9 Ohio St. 3d 216, limited.)"

Although the syllabus in *Morgan* refers only to a "violation of R.C. 124.44," our decision in that case was grounded upon facts which evidenced a bad faith, active violation of law by the city's impermissible delay of a competitive examination for promotion beyond the time required by R.C. 124.44. We held that under such circumstances "* * * it would be wholly inequitable to deny an employee the pay and seniority he would have been entitled to had the city not acted in contravention of state law. To hold otherwise would permit municipalities to avoid their legal responsibilities without regard to damages suffered by their employees. *This is particularly true when the municipality's statutory violations are undertaken, as was found here, in bad faith. Thus, we hold that where a civil service employee shows that a promotion to which he was*

*entitled was delayed as the result of actions taken by a municipality in violation of R.C. 124.44, that employee is entitled to recover back pay and seniority for the period of the delay."* (Emphasis added.) *Id.* at 289, 25 OBR at 340, 496 N.E. 2d at 472.

On the same day that *Morgan* was announced, we decided *Hungler* v. *Cincinnati* (1986), 25 Ohio St. 3d 338, 25 OBR 392, 496 N.E. 2d 912. In *Hungler,* we held that the appellants were entitled to back pay since the promotions to which they were entitled had been delayed or denied as a result of actions taken by the city in violation of R.C. 124.37. Although there was no specific finding of bad faith, we determined that the city's actions were an improper manipulation of the civil service system.

Here, however, there were neither allegations of bad faith nor any facts entered into the record to show any bad faith or an intentional violation of laws by the city. Given the record before us, we hold that relator is not entitled to back pay.

For the foregoing reasons, we hold that relator had a clear right to the promotion and the respondents had clear legal duties to promote him. We further hold that the relator did not have a plain and adequate remedy under the grievance procedure in the collective bargaining agreement. However, relator is not entitled to back pay for the time during which the promotion was delayed since there was no showing of bad faith or an intentional violation of the law by the respondents.

Accordingly, the judgment of the court of appeals is reversed and the writ is allowed as set forth above.

*Judgment reversed
and writ allowed.*

MOYER, C.J., SWEENEY and H. BROWN, JJ., concur.

DOUGLAS, J., concurs separately.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

DOUGLAS, J., concurring. I concur in the judgment of the majority but would go further and grant the back pay due appellant. Appellant was, as is admitted by the majority in granting a writ to appellant, excluded from employment to which he was entitled. To permit such unlawful exclusion without providing any penalty by way of back pay encourages the kind of "selective" promotions and non-promotions involved herein. I would apply the holdings and reasoning in *Monaghan* v. *Richley* (1972), 32 Ohio St. 2d 190, 61 O.O. 2d 425, 291 N.E. 2d 462; *State, ex rel. Dean,* v. *Huddle* (1976), 45 Ohio St. 2d 234, 74 O.O. 2d 378, 344 N.E. 2d 138; *State, ex rel. Martin,* v. *Columbus* (1979), 58 Ohio St. 2d 261, 12 O.O. 3d 268, 389 N.E. 2d 1123; and *State, ex rel. Crockett,* v. *Robinson* (1981), 67 Ohio St. 2d 363, 21 O.O. 3d 228, 423 N.E. 2d 1099, to award the back pay I believe is due appellant.

LOCHER, J., dissenting. Today's decision is in derogation of the Ohio Constitution and well-established legal doctrine by this court. Based on the following, I vigorously dissent.

Section 3, Article XVIII of the Ohio Constitution empowers municipalities "[t]o exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." This court has held that "this constitutional provision first gives municipalities 'authority to exercise all powers of local self-government,' and then, with respect to some of those powers, *i.e.*, the power 'to adopt and enforce * * * local police,

sanitary and other similar regulations,' it limits the powers to adopt such regulations to such 'as are not in conflict with general laws.' However, the limitation is only such a limited limitation. Of course, the mere fact that the exercise of a power of local self-government may happen to relate to the police department does not make it a police regulation within the meaning of the words 'police * * * regulations' found in that constitutional provision." *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, 197, 5 O.O. 2d 481, 485, 151 N.E. 2d 722, 727-728.

The first paragraph of the syllabus in *State, ex rel. Canada, supra,* states: "The appointment of officers in the police force of a city *represents the exercise of a power of local self-government within the meaning of those words as used in Sections 3 and 7 of Article XVIII of the Ohio Constitution.*" (Emphasis added.) In the cause *sub judice,* the Lyndhurst Civil Service Commission has been empowered to make rules concerning promotions for those serving the city by Section 5, Article V of the Charter of the city of Lyndhurst, which provides:

"The Civil Service Commission shall provide by rule for the ascertainment of merit and fitness as the basis for appointment and promotion in the service of the City as required by the Constitution of Ohio, and for appeals from the action of the Mayor in any case of transfer, reduction or removal. The action of the Commission on any such appeal shall be final except as otherwise provided by the Laws of Ohio. * * *"

Thus, Section 5, Article V of the charter delegates to the commission comprehensive authority to adopt rules regarding all civil service matters. This grant of rule-making authority does not require the commission to act in accordance with the general laws of Ohio except with regard to the finality of appeals from certain mayoral actions. This presents a conflict between the charter and R.C. 124.44. In fact, the commission's rule concerning promotions of civil servants is in direct conflict with R.C. 124.44. See footnotes 2 and 3 of the majority opinion.

"The manner of regulating the civil service of a city is peculiarly a matter of municipal concern. One of the powers of local self-government is the power of legislating with reference to the local government within the limitations of the constitutional provisions * * *. *As long as the provisions made in the charter of any municipality with reference to its civil service comply with the requirement of Section 10 of Article XV, and do not conflict with any other provisions of the constitution, they are valid and * * * discontinue the general law on the subject as to that municipality.* That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective." (Emphasis added.) *State, ex rel. Lentz,* v. *Edwards* (1914), 90 Ohio St. 305, 309-310, 107 N.E. 768, 769. Lyndhurst has fully complied with the letter and spirit of Section 10 of Article XV[6] through Section 5, Article V of its city charter and the rule on promotions promulgated by the civil service com-

---

[6] Section 10, Article XV of the Ohio Constitution provides:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

mission. Therefore, the rules of the commission should be applied to the case at bar, not R.C. 124.44. Consequently, relator has no legal right to a promotion.

The majority not only ignores the constitutional provisions and past decisions of this court with regard to the above discussion, but also ignores recent decisions of this court and relies upon fifty-six-year-old court of appeals decisions in announcing that "express charter language is required to enable a municipality to exercise local self-government powers in a manner contrary to state civil service statutes." The majority has completely overlooked *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375, 15 O.O. 3d 450, 402 N.E. 2d 519, in its zeal to make new law. In *Benevolent Assn.*, we held that "[a] non-chartered municipality may enact an ordinance which is at variance with state law in matters of substantive local self-government." *Id.* at 378, 15 O.O. 3d at 452, 402 N.E. 2d at 522. Thus, we determined that an ordinance of a *non-chartered* municipality which was in direct conflict with a state statute governing the same subject matter and same individuals prevailed.

Despite the clear holding of *Benevolent Assn.*, today's decision erroneously states: "[S]ome form of charter authorization is necessary to enable municipalities to adopt ordinances or administrative rules that will prevail over statutory provisions in case of conflict." The majority is obviously confused as to the effect of a municipal charter on a municipality's power of local self-government. In *Benevolent Assn., supra*, at 380-381, 15 O.O. 3d at 454, 402 N.E. 2d at 523, we cited the following from *Perrysburg* v. *Ridgway* (1923), 108 Ohio St. 245, 253, 140 N.E. 595, 597:

"But what is a city charter but a city constitution, and a city constitution can in no wise enlarge the municipal power granted in the state Constitution. After all, it only distributes that power to the different agencies of government, and in that distribution *may place such limitation*, but not enlargement, upon that power, as the people of the municipality may see fit in such charter or constitution. The city charter in no wise affecting the degree of municipal power of the state Constitution, its optional adoption under the language of the Constitution should in no wise affect the operation of Section 3, Article XVIII, which by the constitutional schedule was to go into effect November 15, 1912. Moreover, the language of Section 7 is merely 'may' adopt a charter." (Emphasis added.)

We concluded by stating: "After the *Perrysburg* decision, the advancement of the theory that municipal power was derived from Section 3 of Article XVIII of the Ohio Constitution and not from a charter was clearly established." (Citations omitted.) *Benevolent Assn., supra*, at 381, 15 O.O. 3d at 454, 402 N.E. 2d 523. Thus, we recognized that since municipal power was derived directly from Section 3, the only significance of a charter was to establish a form of government and to have the ability to place *limitations* on Section 3 powers by charter provision. The majority infers the opposite today by stating: "Municipalities exercise the *powers* of local self-government *to the fullest* by adopting a charter pursuant to Section 7, Article XVIII of the Ohio Constitution * * *." (Emphasis added.)

An example of the *limiting* power of a charter is provided, ironically, in *State, ex rel. Pell,* v. *Westlake* (1980), 64 Ohio St. 2d 360, 18 O.O. 3d 514, 415 N.E. 2d 289, cited by the relator herein. In that action, Westlake's Charter

mandated · that the city civil service commission act in accordance with the "general law" of the state of Ohio where that general law did not conflict with the charter itself. The specific general law on the subject of promotion was R.C. 124.44. However, R.C. 124.44 was in conflict with an ordinance adopted by Westlake which was to govern promotions. Recognizing the limitations a charter places on a municipality's power of local self-government, we held that the provisions of the charter prevailed over the ordinance and applied R.C. 124.44. In the instant action, Lyndhurst's Charter places no such limitation on the civil service commission, except for compliance with the requirements of the Ohio Constitution. As indicated above, Lyndhurst has met those requirements.

Based on the foregoing, I can only conclude that the majority is deeply confused in its understanding of the case at bar and that today's decision merely represents an aberration from this court's firmly established legal doctrine concerning municipal home rule.

I would deny the writ and affirm the decision of the court of appeals.

HOLMES and WRIGHT, JJ., concur in the foregoing dissenting opinion.