**REISIG et al.; Birel, Appellant,**

v.

**CAMARATO et al., Appellees.**

[Cite as *Reisig v. Camarato* (1996), 111 Ohio App.3d 479.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69381.

Decided June 3, 1996.

*Teresan Wasie Gilbert,* for appellant.

*Arter & Hadden, Irene C. Keyes–Walker, Tom McDonald* and *Robert J. Hanna,* for appellees.

---

HARPER, Judge.

Plaintiff-appellant, Daniel Birel, appeals from the granting of summary judgment in favor of defendants-appellees, Michael Camarato, Frank Artino, Jeffrey Hodge, Christine Kubec, Richard Diturno, Jr., and David Palumbo, by the Court of Common Pleas of Cuyahoga County. Appellant submits that a genuine issue of material fact remains for litigation as to whether members of the Democratic Central Committee for Cuyahoga County ("the central committee") are "public officials." A careful review of the record compels affirmance.

Camarato, Artino, Hodge, Kubec, Diturno and Palumbo, all duly elected members of the Maple Heights City Council ("the city council"), were also either elected or re-elected to the central committee in 1994. These individuals were to vote on two four-year term leadership positions on the central committee soon after their election or re-election. Dorothy Reisig and appellant, as members of the central committee, sought the available leadership positions. Specifically, Reisig sought to be elected ward leader for the thirty-six central committee members in Maple Heights, and appellant sought to be named to sit on the Executive Committee of the central committee.

Prior to the central committee's elections, Reisig and appellant filed a *pro se* complaint on June 16, 1994 for a temporary and/or permanent injunction, declaratory judgment, and return of monies. They also filed a motion for a temporary restraining order ("TRO"). The crux of Reisig's and appellant's filings was that a conflict of interest existed between the appellees' simultaneous service on city council and the central committee. The trial court denied the motion for TRO and merged the motion for a temporary/permanent injunction with the complaint for declaratory judgment.

Though Reisig voluntarily dismissed her complaint on August 24, 1994 following the central committee's leadership election, appellant filed an amended complaint on November 18, 1994. Appellant set forth four causes of action, including the assertion that the appellees' dual positions constituted a conflict of interest in violation of Section 4, Article III of the Maple Heights City Charter ("Section 4 of the charter"). He also claimed that the dual positions caused him irreparable injury as a result of the appellees' acceptance of "salaries" from both positions, and the bad faith and illegal nature of the dual positions themselves. Finally, appellant maintained that he had standing to bring an R.C. 733.59 "taxpayer suit." Appellant basically desired the removal of appellees from their city council positions because of their membership on the central committee.

Appellees admitted in their answer that they were members of both city council and the central committee. However, they denied that a conflict of interest arose from the dual service.

Appellant and appellees filed motions for summary judgment on November 18, 1994 and November 23, 1994, respectively. The trial court granted the appellees' motion and denied that of appellant on July 13, 1995. The trial court explained its rulings as follows:

"Pursuant to statutory definitions ORC 102.01(B) public official or employee does not include a person elected or appointed to the office of precinct, ward or district committee member * * *. Public office definition ORC 3517.01(B)(9) excludes office of political party and ORC 705.12 specifically allows Central Committeemen to hold municipal legislative office.

"The defendants herein are not in violation of the Maple Hts. Charter by holding a seat on City Council as well as a position on the Central Committee."

This appeal followed, with appellant claiming as error:

"I. The trial court erred to the prejudice of Plaintiff/Appellant in granting Summary Judgment to Defendants/Appellees in ruling that a public official does not include a person elected or appointed to the office of Precinct District Committee Member by employing the statutory definition ORC 102.01(B); public office definition ORC 3517.01(B)(9) which excludes office of political party as a public office; and ORC 705.12 which permits Central Committee members to hold municipal legislative office; in clear violation of the Maple Heights City Charter, Article III, Section [4] which supersedes the state statutes in view of the Ohio Constitution, Article XVIII, Section [3].

"II. The trial court erred to the prejudice of Plaintiff/Appellant in granting Summary Judgment to Defendants/Appellees by not following the well established law in the State of Ohio that members of the Central Committee of a political party hold public office and the undisputed facts demonstrate that Defendants/Appellees simultaneously hold two public offices that of council member of the City of Maple Heights and a member of the Democratic County Central Committee in clear violation of the Maple Heights City Charter, Article III, Section [4]."

Appellees, on appeal, initially question the trial court's rulings by arguing that the court did not have subject matter jurisdiction to entertain appellant's complaint. Appellees describe the complaint as a mechanism by which appellant attempted to have them removed from their city council positions. They argue that appellant could accomplish this result only by filing a petition for a writ of quo warranto, and not through a declaratory judgment action or a taxpayer's suit under R.C. 733.59. Appellees alternatively argue that appellant could not

maintain either a declaratory judgment action or a taxpayer's suit. A review of appellees' motion for summary judgment and brief in opposition to appellant's motion for summary judgment reveals that none of these arguments were specifically raised in either filing.

█  Appellees are correct in their assertion that a proceeding in quo warranto must be initiated in order for an officeholder to be "ousted" from an existing office. *State ex rel. Battin v. Bush* (1988), 40 Ohio St.3d 236, 238–239, 533 N.E.2d 301, 304–305, citing *State ex rel. Hogan v. Hunt* (1911), 84 Ohio St. 143, 95 N.E. 666, paragraph one of the syllabus. Only the Supreme Court of Ohio and the Ohio courts of appeals possess jurisdiction over this type of proceeding. See Sections 2 and 3, Article IV, Ohio Constitution; R.C. Chapter 2733. Subject matter jurisdiction can not be waived in this instance. See *Conneaut v. Wiley* (1992), 82 Ohio App.3d 155, 158, 611 N.E.2d 497, 498.

█  In the present case, while appellees could not waive subject matter jurisdiction by failing to raise the quo warranto argument in the trial court, appellant was incapable of initiating a quo warranto proceeding. Only an individual who is personally claiming title to a public office as a private citizen can maintain a quo warranto action. R.C. 2733.06; *State ex rel. Cater v. N. Olmsted* (1994), 69 Ohio St.3d 315, 322, 631 N.E.2d 1048, 1054; *Battin,* 40 Ohio St.3d at 239, 533 N.E.2d at 305; *State ex rel. Cain v. Kay* (1974), 38 Ohio St.2d 15, 17, 67 O.O.2d 33, 34, 309 N.E.2d 860, 862; *State ex rel. Annable v. Stokes* (1970), 24 Ohio St.2d 32, 53 O.O.2d 18, 262 N.E.2d 863; see *State ex rel. Platz v. Mucci* (1967), 10 Ohio St.2d 60, 39 O.O.2d 48, 225 N.E.2d 238. Since appellant did not claim title to a city council seat, any quo warranto action had to be brought by the Attorney General or a prosecuting attorney. See *Annable,* 24 Ohio St.2d at 32–33, 53 O.O.2d at 18, 262 N.E.2d at 864.

█  Furthermore, appellees' arguments that appellant could not maintain a declaratory judgment action or taxpayer's suit cannot be presented for the first time on appeal. See *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.* (1993), 87 Ohio App.3d 613, 620, 622 N.E.2d 1093, 1097, fn. 2. The vague references to the deficiency of appellant's allegations, *e.g.,* his failure to point to actual harm or conflict, do not alter this conclusion. Appellant's complaint charges that dual membership is *ipso facto* in violation of the city charter. In light of the foregoing facts and the trial court's actual exercise of jurisdiction, which did not include ousting the appellees from office, we are not persuaded that the trial court lacked jurisdiction to entertain appellant's claim that appellees were in violation of Section 4 of the charter.

Appellant seizes on the trial court's explanation as to why it granted judgment in favor of appellees when he argues in his two assignments of error that the

summary judgment is erroneous. He submits that the Ohio Constitution and the Maple Heights City Charter preclude the appellees from dual membership on city council and the central committee because they are "public officials" as a result of their central committee membership, a conclusion not accepted by the trial court.

█ The granting of summary judgment is only appropriate if there is no genuine issue as to any material fact, and reasonable minds can come to but one conclusion that is adverse to the nonmoving party. *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 201, 24 OBR 426, 428, 494 N.E.2d 1101, 1103; Civ.R. 56(C). An order granting summary judgment will, therefore, only be upheld where the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law when construing the evidence most strongly in favor of the nonmoving party. *Johnson v. New London* (1988), 36 Ohio St.3d 60, 61, 521 N.E.2d 793, 794; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

█ Summary judgment is a procedural device that is used to terminate litigation and, therefore, must be awarded with caution with all doubts resolved in favor of the nonmoving party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333, 587 N.E.2d 825, 831; see *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141. However, it "forces the nonmoving party to produce evidence on any issue for which that party bears the production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, citing *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

In the instant case, appellant first focuses on Section 3, Article XVIII, Ohio Constitution, which is otherwise known as the Home Rule Amendment. This section reads as follows:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary, and other similar regulations, as are not in conflict with general laws."

██ A municipality may adopt a charter form of government under Section 7, Article XVIII, Ohio Constitution, subject to the Home Rule Amendment which governs the respective roles of the state and the municipality. Charter provisions will prevail if a portion of the municipality's charter expressly conflicts with a parallel state law. *State ex rel. Bardo v. Lyndhurst* (1988), 37 Ohio St.3d 106, 108–109, 524 N.E.2d 447, 449–451; see *State ex rel. Lightfield v. Indian Hill* (1994), 69 Ohio St.3d 441, 442, 633 N.E.2d 524, 525. However, charter provisions supersede state law only where the municipality clearly and explicitly states the areas where it intends to supersede and override general state statutes. *Bardo,*

37 Ohio St.3d at 110, 524 N.E.2d at 451; *Lightfield*, 69 Ohio St.3d at 442–443, 633 N.E.2d at 525–527. "In the absence of express language in a charter showing that it conflicts with the statutes, it is the duty of the courts to harmonize the provisions of the charter with the provisions of the statute relating to the same matter." *Bardo*, 37 Ohio St.3d at 109, 524 N.E.2d at 450.

Appellant next refers to Section 4 of the charter, which reads:

"[N]o other elective officer shall hold any other public office or public employment except that of Notary Public; a member of the State Militia; a member of the Military Reserve Corps of the United States not on active duty; or a teacher employed in any public school system outside of the City of Maple Heights, and no elective officer shall be interested in the profits or emoluments of any contract, work or service for the Municipality."

Appellant proposes that this section of the charter bars the appellees, as city council members, from holding any other public office, including central committee membership.

Appellant recognizes the apparent clash between his interpretation of the city charter and R.C. 102.01(B) (the Ohio Ethics Law), R.C. 705.12 (governing plans of government) and R.C. 3517.01(B)(9) (governing campaigns and political parties). The difference is exposed by a perusal of these statutes.

R.C. 102.01(B) states:

" 'Public official or employee' means any person who is elected or appointed to an office or is an employee of any public agency. *'Public official or employee' does not include a person elected or appointed to the office of precinct, ward, or district committee member under section 3517.03 of the Revised Code * * *.*" (Emphasis added.)

R.C. 705.12 provides:

"Members of the legislative authority of a municipal corporation shall be electors of the municipal corporation. *They shall not hold any other public office or employment, except that of * * * state or county central committeeman of a political party, or state or county executive committeeman of a political party * * *.*" (Emphasis added.)

R.C. 3517.01(B)(9) states:

"Notwithstanding the definitions found in section 3501.01 of the Revised Code, as used in this section, sections 3517.08 to 3517.14, and section 3517.99 of the Revised Code:

" * * * *

"(9) 'Public office' means any state, county, municipal, township, and district office, *except an office of a political party,* that is filled by an election * * *." (Emphasis added.)

Despite these statutes that are explicit in either characterizing central committee membership as a nonpublic office, or permitting dual membership, appellant claims that the drafters of the city charter intended that council members could not serve as central committee members. Otherwise, the drafters would not have drafted the charter to preclude dual membership by omitting R.C. 102.01(B), 705.12 and 3517.01(B)(9) language. Appellant consequently suggests to this court that the city charter supersedes the state statutes in view of the general power of local self-government sanctioned by the Home Rule Amendment.

There is no dispute that Section 4 prohibits an elective officer such as a city council member from holding any other "public office" or "public employment." In fact, this specific section survived a constitutional challenge in *State ex rel. Vana v. Maple Hts. City Council* (1990), 54 Ohio St.3d 91, 561 N.E.2d 909. See, generally, *Platz,* 10 Ohio St.2d 60, 39 O.O.2d 48, 225 N.E.2d 238 (charter provision that denied council members the ability to hold other public employment valid). However, appellant's position does not touch upon the validity of Section 4 of the charter so as to require an analysis of "superseding"; rather, he takes issue with the definition of "public employment" or "public office."

In order for the appellees to be prohibited from holding another position, the position has to be either a "public office" or "public employment." Section 4 of the charter does not define "public office" or "public employment." It merely sets forth what "public office" or "public employment" can be held by the appellees, specifically, a notary public, a member of the state militia, etc.

In conclusion, it is only appellant's interpretation of Section 4 of the charter which is in conflict with the definitions provided by state statutes. Section 4 does not itself conflict with any general laws of this state. See *Garcia v. Siffrin* (1980), 63 Ohio St.2d 259, 270, 17 O.O.3d 167, 173, 407 N.E.2d 1369, 1377 ("General laws" are defined to mean statutes setting forth police, sanitary or other similar regulations). As stated above, there must be an express conflict between a charter's provision and a parallel state law before the provision can be deemed as superseding the state law. *Bardo; Lightfield.* The charter must also expressly announce that a provision supersedes and overrides the general state statutes. *Id.* Since the charter does not define "public office" or "public employment" for purposes of Section 4 or contain language contrary to the statutory definitions, the trial court correctly recognized that the definitions are provided by the state statutes. See *Jacomin v. Cleveland* (1990), 70 Ohio App.3d

163, 590 N.E.2d 846; *Lakewood v. Urbach* (Feb. 11, 1993), Cuyahoga App. No. 64132, unreported, 1993 WL 35632; compare *State ex rel. Fenley v. Kyger* (1995), 72 Ohio St.3d 164, 648 N.E.2d 493 (statutory definition of "meeting" as set forth in Ohio's Sunshine Law, R.C. 121.22, not applicable to "meeting" as used in charter, as private, executive sessions were not authorized by the charter).

Appellant presents *State ex rel. Hayes v. Jennings* (1962), 173 Ohio St. 370, 19 O.O.2d 314, 182 N.E.2d 546, to avoid the conclusion that central committee members are not public officers. In *Hayes,* the Supreme Court of Ohio determined that central committee members are "public officers" by virtue of the power granted by R.C. 305.02(B), *i.e.,* the power of appointment. *Id.,* paragraph one of the syllabus.

Generally, once words acquire a settled meaning in statutory construction, the same meaning is applied to a subsequent statute on a *similar or analogous* matter. R.C. 1.42; see *Brennaman v. R.M.I. Co.* (1994), 70 Ohio St.3d 460, 464, 639 N.E.2d 425, 428; *Goehring v. Dillard* (1945), 145 Ohio St. 41, 50, 30 O.O. 274, 278, 60 N.E.2d 704, 708. However, "[w]ithout similarity of purpose or subject, the law of prior cases should not be interpolated in subsequent cases." *Brennaman,* 70 Ohio St.3d at 464, 639 N.E.2d at 429. For that reason, we refuse to apply the ruling in *Hayes* that central committee members are "public officers" when given the power to appoint individuals to vacant political posts, to the facts of this case where appellant challenges Section 4 of the charter based upon a purported conflict of interest.

Appellant's assignments of error are overruled.

*Judgment affirmed.*

DYKE and MCMONAGLE, JJ., concur.