[Cite as *Stow Firefighters, IAFF Local 1662 v. Stow*, 193Ohio App.3d 148, 2011-Ohio-1559.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STOW FIREFIGHTERS,
IAFF LOCAL 1662,

     Appellant and Cross-Appellee,

     v.

CITY OF STOW,

     Appellee and Cross-Appellant.

C.A. No.     25209

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2009 05 3705

DECISION AND JOURNAL ENTRY

Dated: March 31, 2011

Ryan J. Lemmerbrock, for appellant and cross-appellee.

Brian A. Reali, Stow Law Director, and Kelley Bryan, Assistant Law Director; and R. Scott Harvey, for appellee and cross-appellant.

_____

DICKINSON, Presiding Judge.

## INTRODUCTION

{¶ 1}  The city of Stow suspended Rod Yoder, a member of the city's fire department, for three days for allegedly harassing and acting discourteously, disrespectfully, and unprofessionally toward a member of the city's parks department and for supposedly being insubordinate and dishonest during an investigation of that alleged misconduct.  At the same time it suspended him, it ordered him to submit to a fitness-for-duty evaluation by a specific psychologist and placed him on involuntary paid leave pending that evaluation.  Following the fitness-for-duty evaluation, the city continued him on involuntary leave, but changed it to unpaid

leave, and told him he could not return to work until the psychologist released him for duty. At the conclusion of the unpaid leave, it discharged him because his leave had expired and the psychologist had not released him for duty.

{¶ 2}  While Yoder was on paid leave, his collective-bargaining representative, Local 1662 of the International Association of Firefighters, filed a grievance on his behalf, challenging the suspension, the order that he submit to a fitness-for-duty evaluation, and the involuntary leave.  After the union filed that grievance, but before the arbitrator heard it, the city placed Yoder on unpaid leave.  He reached the end of his unpaid leave and the city discharged him after the arbitrator heard the grievance, but before he issued his opinion.  The union filed a second grievance challenging the discharge.  This opinion addresses the first grievance.  The second grievance is addressed in an opinion in a companion case, *Stow Firefighters, IAFF Local 1662 v. Stow*, Case No. 25090, 2011-Ohio-1558, which is also being filed today.

{¶ 3}  The arbitrator who heard the first grievance reduced Yoder's three-day suspension to one day, determined that the city had reasonable cause for ordering him to submit to the fitness-for-duty evaluation, determined that the city had acted unreasonably by placing him on paid leave pending the fitness-for-duty evaluation, determined that the fitness-for-duty evaluation itself was tainted and, therefore, void, and directed the city to reinstate him with full back pay and benefits.  The union applied to the Summit County Common Pleas Court for an order confirming the arbitration award, and the city applied to that same court for an order vacating, modifying, or correcting the award.  Although the city did not challenge the arbitrator's reduction of Yoder's three-day suspension to one day, it did challenge the other aspects of his opinion and award, arguing that he had exceeded his authority.

{¶ 4}   The common pleas court determined that the arbitrator had not exceeded his authority or jurisdiction by addressing the order that Yoder submit to the fitness-for-duty evaluation or the city's placing him on paid leave pending that evaluation.  It, therefore, affirmed the parts of the opinion and award that dealt with those matters.  It further determined, however, that the fitness-for-duty evaluation itself and Yoder's unpaid leave following that evaluation were not properly before the arbitrator and vacated the parts of the opinion and award dealing with those matters, along with the order that the city reinstate Yoder with back pay and benefits.  The union appealed, and the city cross-appealed.  This court reverses the trial court's judgment because the arbitrator's determination that the union's grievance was arbitrable did not draw its essence from the collective-bargaining agreement and the trial court, therefore, should have vacated the entire arbitration award as requested.

## BACKGROUND

{¶ 5}   The parties agree that Yoder made a sarcastic comment to a parks department employee, Neil Winnen, about some safety-town buildings that Winnen was helping to move into the fire station where Yoder was working.  After someone complained of harassment, the Stow fire chief, William Kalbaugh, opened an investigation into the incident.  Chief Kalbaugh talked to the park employees and the firefighters who had been present at the time of the incident.  Chief Kalbaugh concluded that Yoder and two other firefighters were lying about what had happened.  As a result, he suspended all three for three days.  At the same time that Chief Kalbaugh informed Yoder of his three-day suspension, the chief also notified him that he was being placed on involuntary paid leave pending the results of a fitness-for-duty evaluation to be conducted by Dr. Alfred Grzegorek.  The union filed a grievance on behalf of the firefighters.  Yoder's grievance proceeded separately and is the only grievance at issue in this appeal.

{¶ 6} After notifying Yoder about the evaluation, the chief continued gathering collateral information from other firefighters about other alleged incidents Yoder had been involved in over the years. In preparation for the evaluation, the chief disclosed the information to Dr. Grzegorek, but refused to share it with Yoder or the union. On the first day of the arbitration hearing, the city was required to disclose the information in response to a subpoena duces tecum.

## THE ARBITRATION

{¶ 7} The union filed the grievance on Yoder's behalf, using a preprinted grievance form. On the part of the form captioned "Alleged Contract Violation," it wrote: "Article XII, and all other applicable Articles of Collective Bargaining Agreement." Article XII deals with disciplinary procedure and, among other things, provides that "[d]iscipline shall be imposed only for just cause."

{¶ 8} On the part of the form captioned "Brief Description of Violation," it wrote, in part, that Chief Kalbaugh had suspended Yoder for three days without pay "stemming from a complaint filed by a City Parks Department employee against Firefighter Yoder and Chief Kalbaugh's investigation of the complaint" and "Chief Kalbaugh has also placed Firefighter Yoder on Administrative Leave and ordered him to undergo a fitness for duty examination." In that same part, after reciting that the chief had alleged that Yoder had harassed Winnen and had been untruthful and evasive during the chief's investigation, it asserted that the chief's allegations "are without basis, and are the result of a biased, unfair investigation engineered to support the charges against Firefighter Yoder," and that "Firefighter Yoder did not harass Winnen, nor was he untruthful or evasive in responding to Winnen's allegations." The union concluded the "Brief Description" by asserting that Yoder was "denied a fair and impartial

investigation of the claims against [him]." The union completed the part of the form captioned "Remedy Requested" by asking that Yoder's three-day suspension be rescinded, that he be compensated for any wages or benefits lost because of the suspension, that he be compensated for any wages or benefits lost "as a result of being taken off shift and subjected to a fitness for duty examination by a psychologist; that all records relating to the discipline be expunged; and any other remedies deemed equitable."

{¶ 9} An arbitrator chosen by the city and the union conducted a four-day hearing spread over four months. He heard testimony from 16 witnesses and issued a 74-page opinion and award. In that opinion and award, he listed three issues. The first, he described as the stipulated issue: "1. Did the Employer have just cause to discipline grievant Rod Yoder? If not, what shall be the remedy?" The other two, he described as issues also presented by the evidence: "2. Whether or not the City's order that the grievant submit to a psychological fitness for duty evaluation is arbitrable?" and "3. Whether or not the City had reasonable cause to refer the grievant for a psychological fitness for duty evaluation and its placement of the grievant on involuntary leave?"

{¶ 10} The arbitrator found that the city had failed to prove that Yoder had committed most of the offenses with which it had charged him. Specifically, while he was convinced that some kind of exchange took place between Yoder and the parks-department employee, he was not convinced that that exchange had amounted to harassment as charged by the city. He did find that the city had shown that Yoder had been discourteous and unprofessional, thereby violating Fire Department Rules and Regulations 600.01.01. The arbitrator further determined that the city had failed to show that Yoder was untruthful or attempted to mislead the chief in his investigation.

{¶ 11} The arbitrator noted that the city had argued that the chief's order that Yoder submit to a fitness-for-duty evaluation was not arbitrable. But he rejected that argument: "The record reveals that the section of the instant grievance entitled 'Brief Description of Violation' specifically mentions the placement of the grievant on administrative leave and the order that he undergo a fitness for duty evaluation. Furthermore, the grievance specifically requests that the grievant '* * * be compensated for any wages and/or benefits lost as a result of being taken off shift and subjected to a fitness for duty examination by a psychologist; * * *.' Based upon the content of the grievance language describing the alleged contractual violation by the City and the Union's requested remedy in this case, the arbitrator determines the instant grievance constitutes a challenge to the exercise of management's rights and responsibilities set forth under Article IV of the collective bargaining agreement. Therefore, the City's order that the grievant submit to a psychological fitness for duty evaluation is, in fact, arbitrable."

{¶ 12} Having determined that the city's order for the fitness-for-duty evaluation was arbitrable, the arbitrator further determined that the city had a reasonable basis for giving that order: "The arbitrator finds that [Mr.] Smith's reporting of a physical altercation involving the grievant, as well as the 'collateral information' concerning the grievant which was collected by Chief Kalbaugh, is sufficient to find reasonable cause for the City to order the grievant to submit to a psychological fitness for duty examination." But he concluded that it was unreasonable to place Yoder on administrative leave pending that evaluation: "The arbitrator determines that it was unreasonable for the City to place the grievant on involuntary administrative leave [before the evaluation] without 'more substantial or probative evidence' giving the City a reasonable basis to place the grievant on involuntary leave, paid or unpaid. No exigent circumstances were

shown to exist. Such action by the City in this case was arbitrary and capricious, and constituted an abuse of managerial discretion."

{¶ 13} Despite having determined that the city had reasonable cause for ordering the fitness-for-duty evaluation, the arbitrator found that the evaluation itself was fatally flawed. In part, he reached that conclusion based on the fact that Dr. Grzegorek's description in his report of the two written statements from other firefighters that the city had provided was inaccurate. According to the arbitrator, Dr. Grzegorek had asserted that both statements accused Yoder of "physical aggressiveness beyond shoving or pushing" although, according to the arbitrator, neither did. He also reached that conclusion based upon the city's refusal to provide the union or Yoder copies of the materials it had given Dr. Grzegorek until required to do so by subpoena during the arbitration hearing: "The examiner's reliance, in part, on the 'collateral information' consisting of multiple levels of hearsay and for which the grievant and Union were without adequate notice and an opportunity to respond to for the examiner's benefit, undermined and severely tainted Dr. Grzegorek's psychological evaluation." The arbitrator further wrote that he found "the probative value of the grievant's fitness for duty evaluation was seriously undermined due to the fact that Dr. Grzegorek did not question the grievant during the interview process concerning any of the incidents contained in the City's collateral information." The arbitrator concluded that the city "did not have reasonable cause to place or maintain the grievant on administrative leave following the issuance of Dr. Grzegorek's report."

{¶ 14} In his opinion and award, the arbitrator sustained the union's grievance in part: "The grievance is sustained in part. The grievant's three-day suspension was without just cause, and the same is hereby modified to a one-day suspension without pay. The City's placement of the grievant on involuntary leave pending and subsequent to his fitness for duty examination

shall be set aside as void and without effect for lack of reasonable cause, and the grievant shall be reinstated to his position with full back pay and benefits." The union applied to the Summit County Common Pleas Court for an order affirming the arbitrator's opinion and award, and the city applied to the same court for an order vacating, modifying, or correcting that opinion and award.

## THE COMMON PLEAS COURT

{¶ 15} The city did not challenge the arbitrator's determination that the three-day suspension was without just cause or his modification of that suspension to one day. Therefore, the part of the arbitrator's decision and award that addressed the incident with the parks-department employee and Yoder's subsequent suspension are not at issue in this appeal.

{¶ 16} The city has argued that the arbitrator exceeded his authority by addressing the parts of the grievance that challenged the city's order that Yoder submit to the fitness-for-duty evaluation and the leave dispute flowing from it, by determining that the city acted unreasonably by placing Yoder on leave pending and subsequent to the fitness-for-duty evaluation, by determining that the evaluation was "fatally flawed," and by determining that Yoder should be reinstated with full back pay and benefits.

{¶ 17} The common pleas court refused to vacate, modify, or correct the arbitrator's determination that the contested parts of the grievance were arbitrable under the terms of the collective-bargaining agreement. According to the court, that part of the arbitrator's order and award "drew its essence" from the collective-bargaining agreement and there was a "rational nexus between the agreement and [that] portion of the arbitrator's findings." It also refused to vacate, modify, or correct the arbitrator's determination that the city had a reasonable basis for ordering Yoder to submit to the fitness-for-duty evaluation.

{¶ 18} The court further refused to vacate, modify, or correct the part of the arbitrator's opinion and award that determined that the city's order placing Yoder on paid leave pending the fitness-for-duty evaluation was void. It held that the arbitrator acted "within his authority to weigh the conflicting opinions and testimony before him and to evaluate the credibility of the witnesses" in determining that the city had abused its "managerial discretion" by placing him on leave pending the evaluation.

{¶ 19} Finally, however, the court vacated the arbitrator's determination that the city acted without reasonable cause when it placed Yoder on unpaid leave following the fitness-for-duty evaluation and his direction that the city reinstate him with full back pay and benefits. According to the court, the issue of whether the fitness-for-duty evaluation was fatally flawed was not properly before the arbitrator.

{¶ 20} The union appealed and has assigned two errors. The city cross-appealed and has assigned two errors.

ARBITRABILITY OF THE GRIEVANCE

{¶ 21} The city's first assignment of error is that the trial court incorrectly denied its application to vacate the arbitrator's award because the union's grievance is not arbitrable under the collective-bargaining agreement. The city has argued that the parts of the grievance involving the city's order that Yoder submit to a fitness-for-duty evaluation and its placement of him on involuntary leave pending that evaluation are not arbitrable under the contract because the parties did not bargain for any limitations on the city's otherwise unrestricted right to evaluate its employees' fitness for duty. It has also argued that there is no rational nexus between the arbitrator's award and the collective-bargaining agreement because the agreement says nothing about the city's right to make decisions regarding an employee's fitness for duty.

{¶ 22} Neither party has suggested that the question of arbitrability was not a question to be decided by the arbitrator in the first instance. For purposes of this decision, therefore, this court has assumed, without deciding, that it was. Contra *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 666, quoting *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 649 (" 'the question of arbitrability— whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance— is undeniably an issue for judicial determination' ").

{¶ 23} "[T]he courts play only a limited role when asked to review the decision of an arbitrator" regarding a collective-bargaining agreement. *United Paperworkers Internatl. Union, AFL-CIO v. Misco Inc.* (1987), 484 U.S. 29, 36. "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." Id. Trial courts " 'do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.' " *Summit Cty. Bd. of Mental Retardation & Developmental Disabilities v. Am. Fedn. of State, Cty. & Mun. Emps.* (1988), 39 Ohio App.3d 175, 176, quoting *United Paperworkers*, 484 U.S. at 38. A court may not reject the factual findings of an arbitrator simply because it disagrees with them. Id. " 'The same is true of the arbitrator's interpretation of the contract.' " Id., quoting *United Paperworkers*, 484 U.S. at 38. " 'The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.' " Id., quoting *United Paperworkers*, 484 U.S. at 38.

{¶ 24} "Contracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process. If parties cannot rely on the

arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the parties have lost the benefit of their bargain." *Automated Tracking Sys., Inc. v. Great Am. Ins. Co.* (1998), 130 Ohio App.3d 238, 243 quoting *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.* (1994), 98 Ohio App.3d 45, 52.

{¶ 25} The parties have implicitly agreed that the arbitrator was authorized to determine substantive arbitrability in the first instance. See *Belmont Cty. Sheriff v. Fraternal Order of Police, Ohio Labor Council Inc.*, 104 Ohio St.3d 568, 2004-Ohio-7106, at ¶ 11. In reviewing the arbitrability question, the trial court correctly applied the standard it would have applied to any other matter that the parties had agreed to arbitrate. Id., citing *AT & T Technologies, Inc.,* 475 U.S. at 649. This court applies a de novo standard of review to the trial court's decision on a motion to vacate under R.C. 2711.10. *Cloverleaf Local School Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emps., Local 371* (July 19, 2000), 9th Dist. No. 3000-M, 2000 WL 988759 at * 2.

Section 2711.10(D): Vacating an Arbitrator's Award

{¶ 26} Under R.C. 2711.10(D), "the court of common pleas shall make an order vacating the [arbitration] award upon the application of any party to the arbitration if * * * [t]he arbitrator[] exceeded [his] powers." The purpose of R.C. 2711.109(D) is "to ensure that the parties get what they bargained for by keeping the arbitrator within the bounds of the authority they gave him" in the underlying arbitration agreement. *Piqua v. Fraternal Order of Police*, 185 Ohio App. 3d 496, 2009-Ohio-6591, at ¶ 21. Generally speaking, provided that the arbitrator's award " 'draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious,' " the arbitrator has not exceeded his power under R.C. 2711.10(D). Id. at ¶ 22, quoting *Findlay City School Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, paragraph two of the syllabus. An arbitrator's award draws its essence from a collective-

bargaining agreement when there is a rational nexus between the agreement and the award. *S.W. Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627* (2001), 91 Ohio St.3d 108, 110. There is a rational nexus between the two if the award is "'rationally supported' by [the] agreement or can be 'rationally derived' from [it]." *Piqua*, 2009-Ohio-6591, at ¶ 26, quoting *Dayton v. Fraternal Order of Police*, 2d Dist. No. 20863, 2006-Ohio-1129, at ¶ 11. "Generally, if the arbitrator's award is based on the language and requirements of the agreement, the arbitrator has not exceeded his powers." Id. at ¶ 22.

{¶ 27} The Second District Court of Appeals has described the standard for determining whether an arbitrator's award "has rational support or can be rationally derived from the terms of the agreement." *Piqua,* 185 Ohio App.3d 496, 2009-Ohio-6591, at ¶ 24, citing *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emps., Local 11* (1991), 59 Ohio St.3d 177, syllabus. The court in *Piqua* explained that "[t]he word 'support' has many senses. Here, we understand the Supreme Court's use of the word in the sense of 'justify,' that the agreement must justify the arbitrator's award: the agreement must give grounds for, make legitimate, or provide justification for, the award." Id. at ¶ 26. "Similarly, the word 'derive' can be used in different senses. We understand the court's use of the word here to be in the sense that the award may be 'deduced' from the agreement, that it may be obtained by reasoning, or reasoned from the agreement." Id.

The Arbitrator's Decision and Award

{¶ 28} The collective-bargaining agreement at issue in this case provides that "[a] grievance is a dispute between the City and the Union or an employee or group of employees, as to the interpretation, application or violation of any terms or provisions of this Agreement, excluding those terms or provisions, or any part thereof governed by ordinances, Charter or those terms or provisions, or any part thereof, under the jurisdiction of the Civil Service Rules and

Regulations." The agreement provides that "[a]ny grievance shall be remedied" through the procedure described in Article XIII. Step Four of that procedure permits the union to appeal an unfavorable decision to arbitration. The agreement also provides that "[t]he decision of the arbitrator shall be final and binding on the parties. The arbitrator shall not have the power to add or subtract from or modify any of the terms of this Agreement."

{¶ 29} Although the arbitration provision is broadly worded, only disputes regarding "terms or provisions of [the] Agreement" may be arbitrated. The city has argued that issues related to fitness-for-duty evaluations are not subject to the arbitration clause because such evaluations are not included in the terms or provisions of the collective-bargaining agreement. In fact, the arbitrator determined that "there is no provision contained in the parties' collective bargaining agreement which specifically pertains to fitness for duty evaluations or otherwise limits the City's right to conduct such evaluations."

{¶ 30} Despite finding no mention of fitness-for-duty evaluations in the agreement, the arbitrator went on to determine that the grievance language "constitute[d] a challenge to the exercise of management's rights and responsibilities set forth under Article IV of the collective bargaining agreement." In support of this conclusion, however, the arbitrator cited only the language of the grievance form itself rather than language of the collective-bargaining agreement. The only part of the collective-bargaining agreement the arbitrator mentioned was the language defining grievance, which requires that in order to be grievable and, therefore, arbitrable, the disputed issue must be a term or provision of the contract. The arbitrator did not point to any term or provision of the management rights and responsibilities section of the agreement that in any way affected the employer's right to conduct fitness-for-duty evaluations. Although acknowledging that the city had consistently argued that the grievance regarding the

order to submit to a fitness-for-duty evaluation was not arbitrable, he rejected that argument based on an analysis of the grievance language under the heading of "Brief Description of Violation" and the remedy requested. The arbitrator acknowledged that he "[b]ased * * * [his decision on] the grievance language" rather than on any language or requirements of the collective bargaining agreement. See *Piqua*, 185 Ohio App. 3d 496, 2009-Ohio-6591, at ¶ 22.

{¶ 31} As the arbitrator did not explain how his arbitrability decision is rationally supported by the collective-bargaining agreement, this court must determine whether his decision could be rationally derived from the collective-bargaining agreement in order to determine whether the trial court should have vacated the arbitrator's decision in this regard. See *Piqua* at ¶ 26, quoting *Dayton v. Fraternal Order of Police*, 2d Dist. No. 20863, 2006-Ohio-1129, at ¶ 11. The question is whether the arbitrator's decision that the fitness-for-duty evaluation "properly falls under those actions of management which are covered by Article IV of the collective bargaining agreement" can be rationally derived from the contract. Article IV of the agreement is entitled "Management Responsibilities." Section 4.03 provides that "[t]he City hereby retains and reserves unto itself all rights, power, authority, duty and responsibility conferred on and vested in it by the laws and constitution of the State of Ohio and the Charter of the City of Stow." Section 4.04 lists certain "exclusive rights and responsibilities of the City" "[n]ot by way of limitation," but "only to indicate the type of rights retained by the City." The list includes the right and responsibility "[t]o direct, supervise, evaluate, or hire and select employees." Section 4.05 of the agreement provides that "the Union agrees that all of the functions, rights, powers, responsibilities and authority of the Employer in regard to the operation of its work and business and the direction of its workforce which the Employer has not specifically abridged, deleted, granted or modified by the express and specific written provisions of this Agreement are, and

shall remain, exclusively those of the Employer." The plain language of the agreement seems to indicate that the city has reserved for itself the right to evaluate its employees' fitness for duty.

{¶ 32} The union has not pointed to any term or provision of the collective-bargaining agreement that modifies the city's reserved right to order an employee to submit to a fitness-for-duty evaluation so as to subject disputes regarding such evaluations to arbitration. The union has argued, however, that management-rights clauses are not exempt from the grievance-and-arbitration process unless there is forceful evidence that the parties agreed to exclude them. The city has argued that Supreme Court precedent supports its position that management-rights clauses in collective-bargaining agreements generally operate to reiterate the statutory reservation of rights to the employer rather than subjecting those rights to arbitration.

{¶ 33} Under R.C. 4117.08(C)(2), a public employer retains the right to "evaluate" employees "[u]nless [it] agrees otherwise in a collective bargaining agreement." In *State ex rel. Bardo v. Lyndhurst* (1988), 37 Ohio St. 3d 106, the Ohio Supreme Court explained that R.C. 4117.08(C) removes the itemized reserved powers from the scope of a collective-bargaining agreement "unless the parties affirmatively address that subject in their negotiations." Id. at 113, fn. 5. The arbitrator in this case agreed with the parties that this collective-bargaining agreement did not include terms or provisions dealing with fitness-for-duty evaluations. Under *Bardo*, the city's right to evaluate its employees did not become a "term or provision" of the contract, subject to arbitration, simply by being included in the listing of reserved rights in the management-responsibilities provision. Both the plain language of R.C. 4117.08(C) and the Supreme Court's decision in *Bardo* run directly contrary to the union's position that "[i]f an employer seeks to prohibit management right terms from being subject to arbitration, it must negotiate terms into the labor agreement excluding such from arbitration."

{¶ 34} The narrow standard of judicial review of an arbitrator's decision requires courts to overlook an arbitrator's legal errors and misinterpretations of the contract. *Summit Cty. Bd. of Mental Retardation & Developmental Disabilities*, 39 Ohio App.3d 175, 176, quoting *United Paperworkers*, 484 U.S. 29, 38. In order to misinterpret the contract, however, the arbitrator must first attempt to interpret the contract and he "may not ignore the plain language of the contract." Id., quoting *United Paperworkers*, 484 U.S. at 38. In order to avoid being vacated, an arbitrator's decision challenged under R.C. 2711.10(D) must be rationally supported by the collective-bargaining agreement or, at least, be capable of being rationally derived from it. See *Piqua,* 185 Ohio App. 3d 496, 2009-Ohio-6591, at ¶ 24, citing *Ohio Office of Collective Bargaining*, 59 Ohio St. 3d 177, syllabus.

{¶ 35} It does not appear that the terms of the collective-bargaining agreement in this matter can "give grounds for, make legitimate, or provide justification for, the [arbitrator's] award" in regard to the arbitrability of the grievance. *Piqua*, 185 Ohio App. 3d 496, 2009-Ohio-6591, at ¶ 26. Furthermore, "the award may [not] be 'deduced' from the agreement [or] * * * obtained by reasoning, or reasoned from the agreement." Id. Having reviewed the arbitrator's decision, the collective-bargaining agreement, the arguments of the parties, and the entirety of the record in this case, this court is unable to point to any rational nexus between the terms of the collective-bargaining agreement and the arbitrator's decision regarding the arbitrability of the Union's grievance. See id., quoting *Dayton v. Fraternal Order of Police*, 2d Dist. No. 20863, 2006-Ohio-1129, at ¶ 11.

{¶ 36} Therefore, the arbitrator's award failed to draw its essence from the collective-bargaining agreement and the arbitrator exceeded the power the agreement afforded him. See R.C. 2711.10(D). Under R.C. 2711.10(D), when an arbitrator exceeds his power, "the court of

common pleas shall make an order vacating the award upon the application of any party to the arbitration." In this case, the statute required the trial court to grant the city's motion to vacate the part of the arbitrator's award that addressed the arbitrability of the grievance. The city's first assignment of error is sustained to the extent that it addressed the arbitrator's decision that the union's grievance was arbitrable.

MERITS OF THE ARBITRATOR'S DECISION REGARDING LEAVE

{¶ 37} The second part of the city's first assignment of error is that the trial court should have vacated the part of the arbitrator's award that ruled that the city breached the management-rights article of the collective-bargaining agreement by placing Yoder on paid administrative leave pending the fitness-for-duty evaluation. This court has determined that the trial court should have vacated the arbitrator's decision that the city's placement of Yoder on leave pending the fitness-for-duty evaluation was arbitrable under the collective-bargaining agreement. Therefore, this part of the city's first assignment of error has been rendered moot and is overruled on that basis.

ARBITRABILITY REVISITED

{¶ 38} The city's second assignment of error is that the grievance is not arbitrable because R.C. 4117.10(A) requires that if the collective-bargaining agreement is silent regarding the employees' fitness-for-duty, the parties are governed by Ohio civil-service law rather than the terms of the collective-bargaining agreement. In this assignment of error, the city has not argued that the arbitrator exceeded his authority under R.C. 2711.10(D). This argument is merely an attack on the legal foundations of the arbitrator's decision, which this court is unable to review. *Summit Cty. Bd. of Mental Retardation & Developmental Disabilities*, 39 Ohio App. 3d 175, 176, quoting *United Paperworkers,* 484 U.S. at 38. Furthermore, since this court has

determined that the trial court should have vacated the arbitrator's decision that the dispute flowing from the fitness-for-duty evaluation was arbitrable, this assignment of error is moot and is overruled on that basis.

## THE UNION'S ASSIGNMENTS OF ERROR

{¶ 39} The union's first assignment of error is that the trial court incorrectly modified the part of the arbitration award dealing with Yoder's involuntary leave following the fitness-for-duty evaluation because it determined the issue was not before the arbitrator. The union's second assignment of error is that the trial court incorrectly modified the arbitration award based on its conclusion that the arbitrator's remedy failed to draw its essence from the collective-bargaining agreement. As this court has determined that the arbitrator exceeded his authority and the award should have been vacated in its entirety, these assignments of error are moot and are overruled on that basis. App.R. 12(A)(1)(c).

## CONCLUSION

{¶ 40} The city's first assignment of error is sustained because the arbitrator exceeded his authority by deciding that the grievance was arbitrable and, therefore, should not have reached the merits of the dispute over whether the city breached the collective-bargaining agreement by placing Yoder on leave pending the fitness-for-duty evaluation. Thus, the trial court should have granted the city's motion to vacate the arbitrator's award under R.C. 2711.10(D). The city's second assignment of error and both of the union's assignments of error are moot based on this court's disposition of the city's first assignment of error. The judgment of the Summit County Common Pleas Court is reversed, and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WHITMORE, J., concurs.

MOORE, J., dissents.

_____

MOORE, Judge dissenting.

{¶ 41} I respectfully dissent, as I would conclude that the arbitrator's award draws its essence from the collective-bargaining agreement. I believe that the majority's technical interpretation of the collective-bargaining agreement is a fair interpretation. However, it fails to give the arbitrator's award the appropriate level of deference.

{¶ 42} Because arbitration is favored as an alternative method of dispute resolution, we encourage its practice and give the decision of the arbitrator a great deal of deference so long as the award "draws its essence" from the collective-bargaining agreement. *Technigraphics, Inc. v. MIT, L.L.C.*, 9th Dist. No. 09CA0005, 2010-Ohio-2946, at ¶ 9, 15. "An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emps. Assn.* (1991), 59 Ohio St.3d 177, syllabus.

{¶ 43} This court has, when reviewing a trial court's ruling upholding an arbitrator's decision, said:

> [W]hen a provision in an agreement is subject to more than one interpretation, and the parties have agreed to submit their contract interpretation disputes to final and binding arbitration, the arbitrator's interpretation of the contract, and not the interpretation of a reviewing court, governs the rights of the parties. * * * "This is so because the arbitrator's interpretation of the contract is what the parties bargained for in agreeing to submit their disputes to final and binding arbitration. The arbitrator's interpretation must prevail regardless of whether his or her interpretation is the most reasonable under the circumstances."

*Cty. of Summit v. Cuyahoga Falls*, 9th Dist. No. 21799, 2004-Ohio-1879, at ¶ 10, quoting

*Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1990), 52 Ohio St.3d

174, 177-178, 556 N.E.2d 1186.

{¶ 44} In fact, the Supreme Court of Ohio has stated that " 'if the reasoning (of an arbitrator) is so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling, then the Court can strike down the award.' " *Goodyear Tire & Rubber Co. v. Local Union No. 200, United Rubber, Cork, Linoleum & Plastic Workers of Am.* (1975), 42 Ohio St.2d 516, 523, quoting *Safeway Stores v. Am. Bakery & Confectionary Workers, Local 11* (C.A.5, 1968), 390 F.2d 79, 82.

{¶ 45} Under the facts of this case, I believe that a judge, or group of judges, could reach the conclusion that the arbitrator's interpretation of the collective bargaining agreement drew its essence from the agreement. Accordingly, I respectfully dissent.