[Cite as *Chardon Local School Dist. Bd. of Edn. v. Chardon Edn. Assn.*, 2013-Ohio-4547.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| CHARDON LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, | : | **O P I N I O N** |
| | : | |
| Appellee, | : | |
| | | **CASE NO. 2012-G-3110** |
| - vs - | : | |
| | : | |
| CHARDON EDUCATION ASSOCIATION/OEA/NEA, | : | |
| | : | |
| Appellant. | | |

Administrative Appeal from the Geauga County Court of Common Pleas, Case No. 12A000345.

Judgment: Affirmed.

*Eric J. Johnson* and *Susan Keating Anderson*, Walter & Haverfield, LLP, The Tower at Erieview, 1301 East Ninth Street, Suite 3500, Cleveland, OH 44114 (For Appellee).

*Charles W. Oldfield* and *Ira J. Mirkin*, Green, Haines & Sgambati Co., L.P.A., 100 Federal Plaza East, Suite 800, Youngstown, OH 44503 (For Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Chardon Education Association/OEA/NEA ("Association"), appeals the judgment of the Geauga County Court of Common Pleas, granting the application of the Chardon Local School District Board of Education ("District") to vacate the arbitration award determining that teacher, Amanda Stechschulte ("Amanda"), should be compensated for "back pay," and denying the Association's

motion to confirm the arbitration award. For the following reasons, we affirm the judgment of the trial court.

{¶2} This case involves the termination of Amanda's employment, a Chardon High School teacher who was convicted of vehicular assault, a fourth degree felony, after causing a serious motor vehicle accident and significant injuries to the driver of the vehicle she hit by driving on the wrong side of a divided highway. Amanda and her husband had been dining locally after school on the evening of March 4, 2010 to celebrate her husband's birthday. Amanda consumed two and one-half beers. She and her husband left the restaurant in separate vehicles. Her husband witnessed the accident because he was following her.

{¶3} Amanda and her husband initially lied to the investigating officer by telling him that Mr. Stechschulte was driving the car involved in the collision. They did so to prevent Amanda from losing her job. However, Amanda eventually admitted she was the driver and that she had been drinking. She was charged with operating a vehicle while under the influence of alcohol. She was eventually acquitted of that charge.

{¶4} Amanda was found guilty of vehicular assault on October 29, 2010, and was sentenced to two years of community control that included 90 days of residential community control in the Lake County jail. Additionally, her driver's license was suspended and she was ordered to pay restitution and perform 200 hours of community service.

{¶5} On April 30, 2010, Amanda returned to work for the District for the remainder of the 2009-2010 school year, taught summer school, and her limited teaching contract was renewed for the 2010-2011 school year. On October 4, 2010,

2

after she was found guilty of vehicular assault, the District placed her on administrative leave with full pay and benefits. After the sentencing hearing, however, the District suspended her without pay. On November 15, 2010, the District terminated Amanda's teaching contract for good and just cause under R.C. 3319.16 (Termination of contract by board of education; hearings; appeals).

{¶6} Amanda completed her sentence on January 18, 2011. On March 22, 2011, more than a year after the accident and four months after the District terminated her employment, the Ohio Department of Education ("ODE") notified both the District and Amanda that it may take action against her teaching license. Subsequently, in August 2011, Amanda entered into a Consent Agreement with the ODE that her teaching license would be suspended until June 30, 2013, the date her five-year teacher's license would have expired. The Consent Agreement also provided that the suspension of her license would not be considered with respect to her future license applications.

{¶7} The Association and the District, previously entered into a collective bargaining agreement ("CBA") that included a grievance procedure which culminated in binding arbitration. Pursuant to the CBA, the Association filed a grievance against the District after the District first suspended Amanda without pay and then terminated her as a member employed by the District and the Association. The grievance proceeded to arbitration over the specific issue of whether the District properly and with "good and just cause" suspended without pay and ultimately terminated Amanda's employment. The arbitrator concluded the District lacked good and just cause to suspend and

3

terminate Amanda's employment and that she should be compensated for the "back pay" period beginning with her release from jail until August 15, 2011.

{¶8} The District moved to vacate the arbitrator's award, and the Association opposed the motion, filing an application to confirm the award. After a briefing schedule, the trial court entered judgment granting the District's motion to vacate, and denying the Association's application to confirm the award. The trial court also ordered the Association to pay the costs of the arbitration. The rationale of the trial court's decision was as follows:

{¶9} "The Arbitrator stated that the matter before him 'should be evaluated in accordance with the only factor enunciated in the [CBA] as warranting termination of a teaching contract during its term: whether or not the grievant's conduct, under all the circumstances presented by the evidence, amounted to "egregious acts and/or behavior."' In making such a statement, the Arbitrator based his decision to award Ms. Stechschulte back pay solely on his conclusion that the School District could not suspend or terminate her teaching contract unless her conduct was egregious.

{¶10} "An Arbitrator may not add terms or provisions to a collective bargaining agreement, nor may an Arbitrator ignore or delete terms or provisions within that agreement. By concluding that the only factor enunciated in the [CBA] as warranting termination of a teaching contract during its term was whether or not Ms. Stechschulte's conduct, under all the circumstances presented by the evidence, amounted to 'egregious acts and/or behavior,' the Arbitrator went beyond misinterpreting the [CBA], he added terms or provisions to the [CBA]."

4

{¶11} The Association filed a timely notice of appeal and raises the following two assignments of error for our review:

{¶12} "[1.] The trial court erred when it granted the Appellee's motion to vacate the arbitration award and denied Appellant's application to confirm the award.

{¶13} "[2.] The trial court erred when it modified the award to order Appellant to pay the costs of arbitration."

{¶14} The standard of appellate review of an arbitrator's award has been recently set forth by this court in *Eastlake v. Fraternal Order of Police/Ohio Labor Council*, 11th Dist. Lake No. 2010-L-057, 2011-Ohio-2201:

{¶15} "We are mindful that 'Ohio public policy encourages the resolution of disputes through arbitration.' *Dayton v. Internatl. Assn. of Firefighters, Local No. 136*, 2d Dist. No. 21681, 2007 Ohio 1337, at ¶9. Generally, 'arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator.' *Id.* at ¶10 (Citations omitted.)

{¶16} In reviewing an arbitrator's award, courts are bound by R.C. 2711.10. As noted by the trial court, the relevant statutory provision at issue is R.C. 2711.10(D), which provides in part:

{¶17} "'In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:'

{¶18} "* * *'

{¶19} "(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'

5

{¶20} "'[G]iven the presumed validity of an arbitrator's award, a reviewing court's inquiry into whether the arbitrator exceeded his authority, within the meaning of R.C. 2711.10(D), is limited. *Once it is determined that the arbitrator's award draws its essence* from the collective bargaining agreement and is not unlawful, arbitrary, or capricious, *a reviewing court's inquiry* for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D) is at an end.' (Emphasis sic.) *Dayton v. Internatl. Assoc. of Firefighters, Local No. 136*, *supra*, at ¶16.

{¶21} "* * *'

{¶22} "The arbitrator is confined to the interpretation and application of the collective bargaining agreement, and *although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous language.*" *Eastlake*, at ¶24-32. "'Accordingly, it is our duty to determine whether the arbitrator's award was reached in a rational manner from the collective bargaining agreement.'" *Id.*

{¶23} "An Arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emp. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177, syllabus (1991).

{¶24} Based on the foregoing, the question before us is whether the trial court had the authority to interpret the CBA between the parties in a way that differed from that of the arbitrator. Specifically, we must determine if the trial court properly found that the arbitrator exceeded his authority in interpreting the relevant portions of the

CBA. For the reasons that follow, we agree with the trial court that the arbitrator misinterpreted the CBA when such interpretation was not justified or necessary, and that the trial court properly vacated the award.

{¶25} Article 5.05.1 of the CBA provides, in part:

{¶26} "Termination of a teacher's contract shall be according to Section 3319.16 and related provisions of the Ohio Revised Code." R.C. 3319.16 provides that the contract of any teacher may not be terminated except for *good and just cause*. Nowhere in R.C. 3319.16 or any related provision does it state that a teacher may not be *terminated* except for egregious conduct. The direct, clear and unambiguous language of the CBA requires that R.C. 3319.16 requires a "just cause" analysis.

{¶27} Second, the first paragraph of Section 5.05.5 of the CBA states:

{¶28} "Except for egregious acts and/or behavior, the [District] shall not abrogate a teacher's contractual rights *provided by the [CBA] between the [District] and the Association*; nor shall a teacher be summarily suspended and terminated by the [District] without reason and a just cause substantive and procedural due process hearing." (Emphasis added.)

{¶29} In making the previously noted statement that Amanda's conduct did not amount to "egregious acts and/or behavior," the Arbitrator was basing his decision to award her back pay solely on his conclusion that the District should not have terminated or suspended Amanda's teaching contract unless her conduct was egregious. However, the "egregious acts and/or behavior language" referenced in Section 5.05.5 does not apply to the termination or suspension of teacher contracts. Rather, it applies to the contractual rights provided by the CBA between the parties.

7

There is a difference between abrogating a teacher's contractual rights provided by the CBA between the parties, and terminating or suspending a teacher's employment contract for good and just cause. For example, as the trial court stated, if the District believed that a teacher's conduct was egregious, the District could contend that such conduct permitted the abrogation of the teacher's right to notice and hearing before suspension or termination of the teacher's employment contract as provided in the CBA.

{¶30} Furthermore, otherwise, the language of Section 5.05.5 of the CBA would not have made a distinction between the two procedures. If the "egregious acts and/or behavior" language were intended to apply to teacher terminations and suspensions, it would have been placed in the section that directly addresses the standard for teacher terminations, i.e., Section 5.05.1. However, as noted, that section mandates that terminations/suspensions be effectuated in accordance with R.C. 3319.16, which provides that termination or suspension require "good and just cause."

{¶31} In sum, the express terms of the CBA states that terminations will be pursuant to R.C. 3319.16, i.e., for good and just cause. The District was not required to prove that Amanda's conduct was egregious before it could suspend or terminate her teaching contract. Therefore, the arbitrator exceeded his authority and improperly executed his powers when he utilized a standard not provided for in the CBA and ignored the application of the good and just cause standard to Amanda's termination.

{¶32} Appellant argues that the version of R.C. 3319.16 in effect in August-September 2009 controls rather than the version that became effective October 16, 2009. However, while the former version of R.C. 3319.16 includes additional language

8

that encompasses specifically enumerated personal character failures, the ending phrase of both versions of the statute is the same, i.e., "except for good and just cause." Thus under either version of the statute, the basis of a teacher's suspension or termination must at least rise to the crest of "good and just cause." Therefore, the trial court's reference to "good and just cause" refers to either the current or former version of R.C. 3319.16 given that the phrase is contained in both.

{¶33} Accordingly, based on the foregoing, because the Arbitrator's award was based upon a determination that was in excess of his authority, the decision that Amanda is entitled to be compensated for the "back pay" period must be vacated. The Association's first assignment of error is without merit.

{¶34} Under its second assignment of error, the Association argues that when the trial court vacated the arbitration award under R.C. 2711.10, it improperly modified the award by ordering the Association to pay the costs of arbitration and that it erred in doing so. Specifically, the Association points out that the District never applied to modify the award; instead, it simply moved to vacate it. Therefore, the trial court erred when it *sua sponte* ordered the Association to pay the costs of arbitration. Again, we disagree with the Association.

{¶35} R.C. 2711.12 provides that "[u]pon the granting of an order confirming, modifying, correcting, or vacating an award made in an arbitration proceeding, the court must enter judgment in conformity therewith." The trial court's order that the Association pay the costs of the arbitration is in conformity with its decision to vacate the arbitration award since the Association, not the District, was the losing party. The CBA provides for the losing party to pay the expenses of the arbitration. Moreover,

9

contrary to the Association's argument, the imposition of costs was not a separate modification of the arbitration award because the award itself was vacated. Accordingly, the trial court properly charged the Association with the costs of the arbitration. The Association's second assignment of error is without merit.

{¶36} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶37}    I respectfully dissent.

{¶38} This court has held that a trial court's role in reviewing an arbitration award to determine whether to vacate or confirm the award is limited. *Kent State Univ. v. Am. Assn. of Univ. Professors*, 11th Dist. Portage No. 2010-P-0064, 2011-Ohio-5597, ¶20, citing *Madison Local School Dist. Bd. of Edn. v. OAPSE/AFSCME Local 4, AFL-CIO and its Local #238*, 11th Dist. Lake No. 2008-L-086, 2009-Ohio-1315, ¶9. An arbitrator is the final judge of law and facts and, as a result, a court may not substitute its judgment for the arbitrator. *Madison* at ¶9. Judicial deference in arbitration cases is based on the recognition that the parties have bargained and contracted for dispute

10

resolution via arbitration in lieu of court proceedings. *Id.* at ¶10. As such the parties have agreed to accept the arbitrator's view of the facts and the meaning of the contract regardless of the outcome. *Id.*

**{¶39}** The trial court held that the arbitrator went beyond misinterpreting the collective bargaining agreement (Agreement) to the point that he added terms or provisions to the Agreement. The basis of the trial court's holding is that the arbitrator improperly used section 5.05.5 of the Agreement in making his decision regarding the termination of Ms. Stechschulte's employment. Section 5.05.5 states in part:

**{¶40}** Except for egregious acts and/or behavior, the Board shall not abrogate a teacher's contractual rights provided by the agreement between the Board and Association; nor shall a teacher be summarily suspended and terminated by the Board of Education without reason and a just cause substantive and procedural due process hearing.

**{¶41}** The trial court stated that section 5.05.1 of the Agreement contains the appropriate provision on teacher terminations. Section 5.05.1 state in part:

**{¶42}** Termination of a teacher's contract shall be according to Section 3319.16 and related provisions of the Ohio Revised Code.

**{¶43}** According to the trial court, since R.C. 3319.16 does not contain any provision stating that a teacher may not be terminated except for egregious conduct, the arbitrator exceeded his authority by including provisions in the Agreement that do not exist.

11

**{¶44}** The fact remains that both provisions of the Agreement reference the standards to be used in the case of teacher terminations. When provisions in a collective bargaining agreement are subject to more than one reasonable interpretation, it is the arbitrator's interpretation of the contract that governs the rights of the parties. "The arbitrator's interpretation must prevail regardless of whether his or her interpretation is the most reasonable under the circumstances." *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 52 Ohio St.3d 174, 177-178 (1990).

**{¶45}** "'The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.'" *Field Local Teachers Assn., OEA/NEA v. Field Local School Dist. Bd. of Edn.,* 11th Dist. Portage No. 2010-P-0086, 2012-Ohio-862, ¶22, quoting *Stow Firefighters v. City of Stow*, 193 Ohio App.3d 148, 2011-Ohio-1559, quoting *Summit Cty. Bd. of Mental Retardation & Dev. Disabilities v. Am. Fedn. of State,Cty. & Mun. Emp.,* 39 Ohio App.3d 175, 176 (9th Dist.1988). "'(A)s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, (* * *)' a court may not vacate the arbitrator's determination." *Madison,* supra, at ¶12, quoting *United Paperworkers Internatl. Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Requests for judicial intervention should be resisted even where the arbitrator has ostensibly made ""serious," improvident" or "silly" errors in resolving the merits of the dispute.'" *Madison,* supra, at ¶12*,* quoting *Michigan Family Resources, Inc. v. Service Employees Internl. Union Local 517M,* 475 F.3d 746, 753 (6th Cir.2007).

**{¶46}** As the arbitrator based his decision upon a provision of the Agreement that concerns teacher terminations he has therefore acted within the scope of his authority.

**{¶47}** For the foregoing reasons, I dissent.