[Cite as *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators Assn. for Dev. Disabilities*, 2018-Ohio-1107.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| PORTAGE COUNTY BOARD OF DEVELOPMENTAL DISABILITIES, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellant, | : | **CASE NO. 2017-P-0003** |
| | : | |
| - vs - | : | |
| | : | |
| PORTAGE COUNTY EDUCATORS ASSOCIATION FOR DEVELOPMENTAL DISABILITIES, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2016 CV 00470.

Recommendation: Affirmed.


*Ronald J. Habowski,* 1931 Basswood Street, Kent, OH 44240 (For Plaintiff-Appellant).

*Ira J. Mirkin* and *Danielle L. Murphy,* Green, Haines & Sgambati Co., L.P.A., 100 Federal Plaza East, Suite 800, Youngstown, OH 44503 (For Defendant-Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, the Portage County Board of Developmental Disabilities ("Board"), appeals from the judgment of the Portage County Court of Common Pleas, upholding the arbitrator's decision in favor of appellee, the Portage County Educators Association for Developmental Disabilities ("Association"). At issue is whether the arbitrator exceeded his authority in finding the language in an employer/employee

agreement to be ambiguous thereby requiring consideration of extrinsic evidence of the practices of other employees in the office. We hold the trial court did not err.

{¶2} Jennifer Conwell was an employee of the Board, working as a registered service specialist. Following a history of discipline, the Board, Conwell, and the Association, as Conwell's union representative, entered a Last Chance Employment Agreement, on September 8, 2014.

{¶3} As set forth in the agreement, Conwell had three verbal and three written reprimands from October 2009 to February 2013 for tardiness and "lack of sufficient accrued sick leave." She was suspended for three days in 2014 for continued attendance problems. Due to these concerns, the agreement was entered "as a condition of continuing employment."

{¶4} The agreement stated that Conwell's "continued employment is dependent upon her meeting certain conditions * * * (as described below)" and that failure to meet these conditions would "result in immediate termination of employment." Pertinent terms included:

{¶5} "C. Employee will check in using the computer kiosk by no later than 8:05 a.m. each workday * * *.

{¶6} "D. Employee will have no more than five (5) occurrences of arriving late for work (i.e. checking in later than 8:05 a.m. and/or failing to check in on the kiosk) and/or leaving work early without permission or approval during any "rolling" six month period * * *.

{¶7} "* * *

2

**{¶8}** "G.   There will be no future instances of false or erroneous documentation."

**{¶9}** The Agreement further provided:

**{¶10}** "Employer may immediately terminate Employee's employment for violations of this Agreement.   The Union and Employee waive the right to challenge through the grievance procedure or other means any termination or other discipline imposed under the terms of this Agreement, unless otherwise provided for in law, except Employee may challenge through the grievance procedure the issue of whether or not she failed to meet the conditions of this Agreement."

**{¶11}** The Board determined a violation had occurred when Conwell improperly recorded her hours worked and terminated Conwell's employment.   The Association requested arbitration regarding this decision, alleging a violation of the Last Chance Employment Agreement.   A two-day hearing was held before the arbitrator, at which the following pertinent testimony was presented.

**{¶12}** Lynn Leslie, the Board's Director of Human Resources, testified that the Last Chance Agreement came about following an incident in July 2014 when there was a discrepancy in Conwell's reported time for arriving at work.   This incident followed six prior reprimands and a suspension due to attendance-related issues and missing work without sufficient leave.

**{¶13}** Regarding the incident leading to Conwell's termination under the Last Chance Agreement, on October 21, 2014, an electronic tracking system showed Conwell checked into work at 8:11 a.m.   In a different portion of the system, which Leslie indicated would accept time recording in five-minute periods, Conwell entered

that she started at 8:00 a.m. On Conwell's handwritten timesheet, she had indicated 8:00 a.m. as her start time, although she subsequently corrected the time.

{¶14} Several employees at the Board testified regarding this system, including Conwell's supervisor. They noted that time could only be entered on the kiosk in 15 minute increments and that mistakes with both this system and the timesheets were common throughout the office.

{¶15} Conwell, who had been a Board employee for 14 years, testified that her attendance issues had related to several personal and family problems over the course of a two-year period of time. As to the incident leading to her termination, she described signing in at 8:00 a.m. as a matter of habit, but corrected this on her timesheet the next morning once she realized her mistake.

{¶16} In a March 24, 2016 decision, the arbitrator stated the issue was whether Conwell "violated the LCA by writing 8:00 a.m. on the time sheet for October 21, 2014 and entering it on the kiosk on October 21, 2014." The arbitrator focused on whether this violated the clause prohibiting "false or erroneous documentation."

{¶17} The arbitrator's opinion found that, in relation to the meaning of the word "erroneous," "the words in the LCA mean what they have typically meant to the parties,' and that their day-to-day practices should be considered. The opinion emphasized testimony that employees sometimes made mistakes on their time sheets and were permitted to correct them, which Conwell did the next morning. The arbitrator concluded that "this is not the kind of 'erroneous documentation' intended by the LCA." He also found that Conwell entering 8:00 a.m. on the kiosk was not "erroneous" under the Last Chance Agreement, as time could only be entered in 15 minute increments.

4

The arbitrator ordered that Conwell be reinstated to her previous position, with back pay.

{¶18} On May 23, 2016, the Board filed an Application for Vacation of Arbitration Award in the Portage County Court of Common Pleas. The Association filed a response and Application to Confirm Arbitration Award. The Board filed a brief in support of its position, arguing, inter alia, the arbitrator improperly applied the collective bargaining agreement, and disregarded or modified the plain and unambiguous language of the Last Chance Agreement. The Association responded, contending the Board could not establish the arbitrator exceeded his authority.

{¶19} The court of common pleas issued a judgment, finding there was "sufficient evidence presented allowing the arbitrator to render the award" and the arbitrator "did not exceed his statutory authority or so imperfectly execute it in rendering his decision." The court denied the Board's motion to vacate and granted the Association's motion to confirm. The Board now appeals, assigning the following as error:

{¶20} "The trial court erred when it found there was sufficient evidence presented allowing the arbitrator to render the award and that the arbitrator did not exceed his statutory authority or so imperfectly execute it in rendering his decision."

{¶21} "A court of common pleas can only review binding arbitration awards for a limited number of reasons, and it must base its decision solely on the arbitration record." *Portage Cty. Bd. Of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 11th Dist. Portage No. 2016-P-0032, 2017-Ohio-888, ¶13. The arbitrator is the final judge of both the law and the facts, and a court may not substitute its judgment

5

for that of the arbitrator. *Madison Local School Dist. Bd. of Edn. v. OAPSE/AFSCME Local 4,* 11th Dist. Lake No. 2008–L–086, 2009–Ohio–1315, ¶9. Further, an arbitrator's decision is presumed valid and therefore enjoys great deference. *Id.,* citing *United Paperworkers Internatl. Union v. Misco, Inc.*, 484 U.S. 29, 36–38 (1987). Judicial deference in arbitration cases is based on a recognition that the parties have agreed to have their dispute settled by an arbitrator rather than the courts and "to accept the arbitrator's view of the facts and the meaning of the contract regardless of the outcome of the arbitration." *Madison Local School Dist., supra*, at ¶10, citing *United Paperworkers,* supra, 37–38.

{¶22} The request for judicial intervention should be resisted even where the arbitrator has ostensibly made ""'serious," "improvident" or "silly" errors in resolving the merits of the dispute.'" *Madison Local School Dist.,* supra, at ¶12, quoting *Michigan Family Resources, Inc. v. Serv. Employees Internl. Union Local 517M*, 475 F.3d 746, 75 (6th Cir.2007), citing *United Paperworkers,* supra. "Even a grossly erroneous decision is binding in the absence of fraud." *Arrow Uniform Rental L.P. v. K & D Group, Inc.*, 11th Dist. Lake No. 2010-L-152, 2011-Ohio-6203, ¶39, citing *Advanced Technology Incubator, Inc. v. Manning,* 11th Dist. Portage No. 2001-P-0154, 2003-Ohio-2537, ¶12. Thus, an appellate court will not reverse the confirmation of an arbitration award on the basis that the award was against the manifest weight of the evidence or that the arbitrator's legal analysis was factually or legally wrong. *Arrow Uniform Rental L.P., supra*, citing *Hacienda Mexican Restaurant of Ohio v. Zadd*, 11th Dist. Lake No. 92–L–108, 1993-WL-548066, *2 (Dec. 10, 1993).

{¶23} Further, judicial review of arbitration awards is narrowly limited by R.C. 2711.10 and R.C. 2711.11. *Mike McGarry & Sons, Inc. v. Marous Bros. Constr., Inc.,* 11th Dist. Lake No.2009–L–056, 2010–Ohio–823, at ¶14. The Supreme Court of Ohio has held that "the vacation, modification or correction of an award may only be made on the grounds listed in R.C. 2711.10 and 2711.11 * * *. The jurisdiction of the courts to review arbitration awards is thus statutorily restricted; it is narrow and it is limited." *Warren Edn. Assn. v. Warren City Bd. Of Ed.*, 18 Ohio St.3d 170, 173 (1985). In this case, the Board contends the underlying award should be vacated because the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." R.C. 2711.10(D).

{¶24} The Board sets forth four issues under its assigned error. Under its second issue, it asserts the Last Chance Agreement is enforceable; similarly, under its fourth issue, the Board contends the Agreement is conscionable. The Association does not dispute the enforceability or conscionability of the Agreement. Indeed, the Association notes, the enforceability and conscionability of the Agreement was not a matter before the arbitrator or the court of common pleas. We therefore need not address these issues.

{¶25} Within both its first and third issues, the Board argues the arbitrator disregarded the plain language of the Last Chance Agreement and impermissibly considered the surrounding circumstances of the purportedly unambiguous agreement. In so doing, the Board maintains the arbitrator exceeded his powers as the interpretation of the Last Chance Agreement was not justified or necessary.

7

{¶26} The arbitrator found that even though the Last Chance Agreement prohibited "false or erroneous documentation," the term "erroneous" was unclear and ambiguous; hence, he maintained, the term could not be interpreted in a vacuum. The arbitrator noted there was no previous issue with appellee erroneously documenting her time. And, he further underscored that mistakes on time sheets were not uncommon and employees were routinely given the opportunity to correct such mistakes, sometimes as long as a week after the sheets were submitted. Under these circumstances, the arbitrator maintained the word "erroneous" "must be read in light of the leeway given employees to correct their times." Pursuant to the surrounding circumstances, the arbitrator found that the term "erroneous" as it relates to time-sheet documentation, required more than evidence of a mistake; instead, the arbitrator found, the Last Chance Agreement required some evidence that appellee was "trying to hide" the mistake. Because Conwell corrected her mistake the day after it occurred, the arbitrator found there was no evidence that appellee was trying to hide the mistake.

{¶27} Because the arbitrator found the Last Chance Agreement's use of the term "erroneous" ambiguous, he construed the agreement in the context of the evidence presented at the hearing. The facts included not only Conwell's conduct in the instant matter, but also the Board's common practices vis-à-vis processing time sheets. The arbitrator was charged with evaluating the facts and giving meaning to the contract. While his determination was informed by the unique facts presented at the hearing, this does not imply he failed to draw the essence of his findings from the agreement.

{¶28} As noted above, we must "accept the arbitrator's view of the facts and the meaning of the contract regardless of the outcome of the arbitration." *Madison Local*

8

*School Dist., supra*, at ¶10. In light of this standard, the court of common pleas did not err in confirming the arbitrator's award because, even applying the de novo standard as to whether any of the grounds contained in R.C. 2711.10 exist, the trial court did not "exceed his powers." *See* R.C. 2711.10(D). By arguing the arbitrator exceeded his authority or that his interpretation was not justified or necessary, the Board is reweighing the evidence towards the end of concluding his factual and legal analysis was wrong. Were we to adopt the Board's position, we would be transcending our very narrow scope of review in arbitration appeals. *See e.g. Hacienda Mexican Restaurant of Ohio*, *supra*. We decline to do so.

{¶29} The Board's assignment of error lacks merit.

{¶30} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas, confirming the arbitrator's award, is affirmed.

COLLEEN MARY O'TOOLE, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶31} I dissent from the majority's opinion, affirming the lower court's judgment to uphold the award of the arbitrator. Since the facts of this case indisputably demonstrate that the arbitrator far exceeded his authority in interpreting the language in the employer/employee agreement, creating his own terms and definitions, the trial court's decision was made in error. To decide otherwise is to abdicate this court's

9

authority to provide the appellant with proper review of its case and diminishes this court's role to the point where it becomes a court of review in name only.

**{¶32}** In the present matter, the parties entered a Last Chance Employment Agreement due to Conwell's repeated and uncontroverted attendance problems, which were so significant that she had received three verbal reprimands, three written reprimands, and had been suspended. Conwell was given a final opportunity to continue her employment through the Agreement, which required that, to avoid "immediate termination," she must arrive at work in a timely manner and, significantly, have "no future instances of false or erroneous documentation." Conwell clearly failed to meet the terms of this Agreement when she improperly indicated on a timesheet that she arrived at 8:00 a.m., rather than the correct time of 8:11 a.m.

**{¶33}** There can be no question that Conwell's actions constituted "false or erroneous documentation." This language used in the Last Chance Agreement is clear and unambiguous. The definitions of the word "false" and "erroneous" could not be more straightforward. Multiple dictionaries define erroneous as "containing or based on error; mistaken," or "incorrect." *Webster's II New College Dictionary* 389 (3d Ed.2005); *Black's Law Dictionary* 582 (8th Ed.2004). *Also Merriam-Webster's Collegiate Dictionary* 425 (11th Ed.2004) ("containing or characterized by error"). Similarly clearly defined is false, which means "being contrary to truth or fact." *Webster's II New College Dictionary* 412 (3d Ed.2005). Conwell admitted the inaccurate documentation of time, stating that it was a "mistake." This falls *directly* under the definition of "erroneous." Thus, Conwell's timesheet entry was an instance of **both** false and erroneous documentation.

**{¶34}** The arbitrator, however, completely ignored this unambiguous language. Instead, he created his own definition of "erroneous," by considering what he believes the parties may have intended, looking at what the terms in the LCA "have typically meant to the parties," and their "day-to-day practices." The decision emphasized testimony that employees sometimes made mistakes on their time sheets and were permitted to correct them. This analysis was entirely improper, as the arbitrator resorted to evidence outside of the Agreement to determine its meaning. "[A]lthough [the arbitrator] may construe ambiguous contract language, he is **without authority** to disregard or modify plain and unambiguous language." (Emphasis added.) (Citation omitted.) *Chardon Local School Dist. Bd. of Edn. v. Chardon Edn. Assn.*, 3 N.E.3d 1224, 2013-Ohio-4547, ¶ 22 (11th Dist.); *see Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11 ("[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties"). This case contains a prime example of a written agreement in which there is no ambiguity whatsoever.

**{¶35}** Furthermore, it completely defies logic for the arbitrator to apply the day-to-day rules and practices of employment for timekeeping which applied to other employees. This is not properly considered given the clear terms of the Last Chance Agreement and is irrelevant since none of the other employees were subject to such an Agreement. She was subject to the terms of the Agreement due to attendance issues, which do not allow leeway for mistaken entries on the timesheet but, rather, specifically prohibit such mistakes.

11

**{¶36}** An arbitrator's award must "draw its essence" from the parties' agreement and cannot be unlawful, arbitrary, or capricious. *Dayton v. Internatl. Assoc. of Firefighters, Local No. 136,* 2d Dist. Montgomery No. 21681, 2007-Ohio-1337, ¶ 16. An arbitrator's award "departs from the essence" of the parties' agreement when: "(1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Eastlake v. Fraternal Order of Police,* 11th Dist. Lake No. 2010-L-057, 2011-Ohio-2201, ¶ 33, citing *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emp. Assn., Local 11, AFSCME, AFL-CIO,* 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), syllabus.

**{¶37}** An arbitrator's award lacks rational support, does not draw its essence from the parties' agreement, and must be vacated when it ignores the express and unambiguous terms of the parties' agreement. *See Chardon Local School Dist.*, 3 N.E.3d 1224, 2013-Ohio-4547, at ¶ 24 and 31 (an arbitrator's award is properly vacated when the interpretation of the parties' agreement was "not justified or necessary").

**{¶38}** The majority points to this court's narrow scope of review in arbitration appeals as its main justification for its determination. If we are not to reverse an arbitrator's decision when he ignores the plain language of a document, overlooks the well-established law regarding unambiguous contract terms, and creates his own contract to enforce upon the parties, when would this court ever reverse an arbitrator's decision? The legislature would not have provided a statutory right for parties to seek appellate review if this court were to have no authority to reverse blatant errors of law. This distinguished court does not exist merely to rubber-stamp decisions reached below. It is clear that the arbitrator's decision should have been vacated under R.C.

2711.10, since he "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." R.C. 2711.10(D).

{¶39} Given the foregoing, based on the arbitrary and unlawful decision reached by the arbitrator, reversal is warranted. For these reasons, I dissent.